## OPINION TO THE GOVERNOR.

### FEBRUARY 25, 1939.

February 25, 1939.

To His Excellency, William H. Vanderbilt,

    Governor of the State of Rhode Island

      and Providence Plantations:

We have received from your excellency a request for our written opinion, in accordance with the provisions of sec. 2 of article XII of amendments to the constitution of this state, upon the following questions, viz.:

"1. May the Legislature authorize and empower the Superior Court sitting in any county to impanel a special or additional grand jury to attend said Superior Court to serve for such time as may be required and until discharged by said court, said special or additional grand jury to sit in the same county, whenever necessary, contemporaneously with the regular grand jury which, in accordance with the existing law, has been impanelled and is then in attendance on said Superior Court?

"2. If the answer to Question 1 is in the affirmative, may the Legislature further provide that such special or additional grand jury be confined in its inquiries and investigations to only such matters as shall be presented to it by the Attorney General, Assistant Attorneys General, special Attorneys General, or special counsel appointed by the Attorney General?"

"3. If the answers to Questions 1 and 2 are in the affirmative, may such matters referred to in Question 2 be confined and restricted to such special or additional grand jury while it is in attendance so that such matters shall not be inquired into or investigated by the regular Grand Jury which has been impanelled and is then in attendance on the Superior Court in the county in which special or additional grand jury is in attendance?"

In response to these questions, we have the honor to submit the following opinion:

The existence of a power in the legislature to authorize the impaneling of an additional grand jury, to function at the same time and in the same county with a regular grand jury attending upon the same court, at once suggests possible conflict with at least three sections in our constitution. These sections read as follows:

"Article I. Sec. 7. No person shall be held to answer for a capital or other infamous crime, unless on presentment or indictment by a grand jury; except in cases of impeachment, or of such offences as are cognizable by a justice of the peace; or in cases arising in the land or naval forces, or in the militia when in actual service in time of war or public danger. No person shall, after an acquittal, be tried for the same offence.

"Sec. 10. In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury; to be informed of the nature and cause of the accusation, to be confronted with the witnesses against him, to have compulsory process for obtaining them in his favor, to have the assistance of counsel in his defence, and shall be at liberty to speak for himself; nor shall he be deprived of life, liberty, or property, unless by the judgment of his peers, or the law of the land.

"Sec. 15. The right of trial by jury shall remain inviolate."

These provisions relate to various phases of the same general subject matter and all appear in the very first article of our constitution, wherein is recited substantially the bill of rights. Together these three sections constitute the essential guarantees of an accused in certain cases to a proper indictment by a grand jury, and a trial by petit jury which shall be inviolate. If the existence of the power in the legislature, as referred to in question 1, is found to be repugnant to the guarantees in *any* of these sections, the answer to the first question should be in the negative.

The question therefore presented for our immediate consideration is whether the power in the legislature suggested

in question 1 substantially infringes or limits the rights of the citizen as guaranteed by the bill of rights in any of these sections. In approaching and dealing with this question, we must keep in mind that the preamble to the bill of rights in article I of our constitution expressly declares "that the essential and unquestionable rights and principles hereinafter mentioned shall be established, maintained, and preserved, and shall be of paramount obligation in all legislative, judicial, and executive proceedings."

It is unnecessary here to go at great length into the history of the grand jury. It was so definitely fixed and established in the law of England that its composition, purpose and scope of power in certain criminal matters were universally known and accepted, and they are not now open to dispute. Almost from time immemorial, the grand jury was composed of not more than twenty-three *sworn* members and the concurrence of at least twelve of such members was always necessary in order to return a valid indictment. One of its main purposes was to protect the rights of the individual citizen against possible oppression by the crown or its agencies in the prosecution of crimes; or, as has been elsewhere stated, to safeguard the individual's rights against private malice, party passion or governmental abuse.

The powers of the grand jury were indeed broad and were not specially limited merely to matters presented by the crown or the charge of the court. Certainly the common law grand jury in England was not so limited. This readily appears from the form of oath administered, under which it could also investigate and act upon matters which might come properly before it through such knowledge of any of its own members as was based upon their own observations or evidence, but not upon mere rumor or reports. A grand jury thus constituted functioned in this manner in England without any substantial change for several hundred years prior to the adoption of our constitution. No other kind of grand jury was known.

It seems clear, too, that this kind of grand jury *and no other* was contemplated by certain express language in the royal charter granted in 1663, which continued in force until our constitution was adopted in 1842. By the charter the legislature received a grant of the power to make laws thereunder but only "so as such laws, ordinances and constitutions, so made, be not contrary and repugnant unto, but, as near as may be, agreeable to the laws of this our realm of England, considering the nature and constitution of the place and people there." (see *Gunn* v. *Union Railroad Co.,* 23 R. I. 289 at 292)

While some minor variations in connection with a trial by petit jury in civil matters may have taken place from time to time, it is important to note that no variation in the substantial requirements of a presentment or indictment *by a grand jury* in certain crimes was ever attempted by the legislature or any agency under our government before the adoption of the constitution. Nor was there any deviation from the customary procedure *by a grand jury* as it was known at common law and was established in England. The guide-posts and safeguards in such criminal matters, which were provided by the common law grand jury, were so entirely known and accepted that they were adhered to continuously and without substantial change for over one hundred fifty years before the adoption of our constitution.

When our constitution was adopted in 1842 no change was made in that respect. The three above-quoted sections, 7, 10 and 15, were written into the bill of rights and were placed in the very first article thereof. These three sections should be read together as expressly providing certain essential guarantees intended for the protection of one accused of a capital or infamous crime. They provide the basic principles of law and procedure which must be complied with in order to have a valid trial of an accused in such a case. The main purpose of these provisions, it seems to us, was to guarantee expressly to the accused in such a case the

same kind of protection against possible oppression by any department or agents of government under the constitution as was afforded previously through the agency of a common law grand jury.

It certainly was not intended that such guarantees in the bill of rights should provide less protection than was afforded under the charter. In the time at our disposal, we have found no instance, under our charter form of government before the adoption of our constitution or in this state since the adoption of our constitution, where the legislative branch of our government ever attempted to exercise power to make any substantial changes in the composition, purpose or prerogative customarily associated with and accorded to a grand jury under the common law. Nor have we found any such instance in England prior to the declaration of our state's independence on May 4, 1776.

From the history of the grand jury, only briefly outlined here, in England and in Rhode Island up to the time of the adoption of our constitution, and from a consideration of the language of sec. 7, we draw the natural and, as we think, the necessary conclusion that the framers of our constitution, by writing that section into the bill of rights, intended to secure thereby to every person who might be accused of a serious crime the same protection as had been provided by the common law, through the same kind of grand jury which was traditional at common law and functioning in substantially the same way, being the only kind of grand jury that such framers knew. See *Mathews* v. *Tripp,* 12 R. I. 256. Among other things which they intended when they wrote into our constitution: "No person shall be held to answer for a capital or other infamous crime, unless on presentment or indictment by a grand jury; except in cases of impeachment . . .", they undoubtedly intended to require a presentment or indictment found by *a grand jury* of not more than twenty-three nor less than twelve sworn members. at least twelve of whom must concur in such finding, and *only such a grand jury.*

Similar language in the constitutions of other states has been thus construed; and legislation in such states providing for a grand jury of more members than twenty-three or for the validity of a presentment or indictment concurred in by less than twelve members has been declared void as violating the requirements of such language. This result has been reached on the ground that, by such a change in the requirements for a valid presentment or indictment, persons who might be accused of serious crimes would be deprived of some of the constitutional protection previously enjoyed by them, since the change would make it easier to obtain presentments or indictments against such persons. *State* v. *Barker,* 107 N. C. 913, 12 S. E. 115. Note in 27 L. R. A. 846, and cases cited. 2 Bishop's New Crim. Procedure 652.

In our judgment these authorities lay down the correct rule and we know of no authority to the contrary.

The first question now before us is, in substance, whether for a similar reason an act providing for the contemporaneous existence and functioning of two or more grand juries in the same county violates the same constitutional requirement in sec. 7 of our bill of rights. So far as we have been able to ascertain, there was not in England or in Rhode Island before the adoption of our state constitution, any instance of the contemporaneous existence and functioning of such grand juries.

There have been a good many instances of the existence and functioning of a special grand jury in the same county and during the same term of court *after the regular grand jury has been discharged.* But the existence and functioning of *such* a special grand jury *after* the dismissal of the regular grand jury provide a very different situation from that of the existence and functioning of more than one grand jury in the same county *at the same time;* and we are not aware of any such different instance occurring in England or in this country before the adoption of our constitution. We very much doubt that the framers and adopters of our constitution knew of any such instance.

We are convinced that the framers and adopters of our constitution did not contemplate, under the expression "a grand jury", one of two or more grand juries existing and functioning at the same time in one county. Therefore, we are also convinced that a presentment or indictment found by such a special or additional grand jury would not satisfy the requirements of sec. 7, if construed with reasonable strictness.

The contention may be made, however, that this section should not be strictly construed, because a statute providing for the existence and functioning of two or more grand juries at the same time and in the same county would not substantially lessen the protection which persons who may be accused of serious crimes now enjoy under our constitution with only one grand jury functioning at a time in any county.

In considering this contention, we must keep in mind the fact, brought out *supra,* that every grand jury under the common law had the power to investigate into *all* kinds of indictable crimes committed in its county and not merely into certain kinds of such crimes or only those called to its attention by a prosecuting officer or by the court. Such broad powers were inherent in the nature of every grand jury at common law and, therefore, in our opinion, it follows that "a grand jury" within the meaning of that term in sec. 7 *must* have the same full powers as a common law grand jury.

It necessarily follows from this that, if two or more grand juries could validly be authorized to exist and function at the same time in the same county, each one of them would have all the broad and inclusive powers above described, which were essential attributes of a common law grand jury; and that such powers could not be divided between or among them, on the basis of different kinds of crimes, or according to the wishes of prosecuting officers, or otherwise. This conclusion requires negative answers to the second and

third questions that have been asked of us, the subject matter of which we have found it necessary to discuss in order to make clear our reasons for answering the first question as we do.

From this conclusion another follows, *viz.*: that if there were two such grand juries existing and functioning at the same time in a county, each one of them would necessarily have the power to consider and act upon the case of the same person accused of one indictable crime; and this would greatly increase the chance that there would be at least *one* presentment or indictment against him; and there might be two, for the same crime and even based on the same evidence. This shows clearly that the authorization of two grand juries to function in the same county and at the same time would seriously lessen the protection of a citizen against possible unjust prosecutions.

Therefore we are of the opinion that the language of sec. 7 of our bill of rights must be construed as requiring the finding of a presentment or indictment by a *single* grand jury, functioning alone in the county at the time of such finding, and not as permitting such a finding by one of several grand juries existing and functioning contemporaneously. It follows that in our opinion a statute, authorizing a special or additional grand jury to sit in a county contemporaneously with the regular grand jury for the same county, would be in violation of the bill of rights in our constitution. Having reached this conclusion as to sec. 7, it becomes unnecessary to consider the effect upon secs. 10 and 15.

A considerable search has disclosed no case in England which held that a special or additional grand jury may validly function at the same time and place with the regular common law grand jury. Apparently, the fundamental principle in this respect was so firmly established that it was never attempted in England, so far as we have discovered. Moreover, in the time at our disposal, we have not found,

in any jurisdiction in this country where the pertinent constitutional provisions and practice have been substantially the same as those in Rhode Island, any case in which it has been held that a special or additional grand jury may validly function contemporaneously with the regular common law grand jury, unless one case in Ohio, to be discussed *infra,* is such a case. We have found and examined many other cases in which a special grand jury is referred to; but the special grand jury in each of those cases is not the kind of grand jury which is contemplated in the questions propounded to us.

On the contrary, the so-called special grand jury in each of those cases really appears to be a substitute for a regular grand jury, when the latter has been discharged or, for some other legal defect or reason, has ceased to legally function. The gap thus created would have left the court in those cases without the necessary means to perform its duty under the law; and such gap was then filled by permitting the court to call a so-called special grand jury to act in place of the regular grand jury. None of these cases, however, validates the functioning of a special grand jury contemporaneously in the same court and county with a regular common law grand jury which was legally functioning.

On the contrary, the opinions in most, if not all, of those cases seem to recognize the necessity of the discharge of the regular common law grand jury, or some defect in such grand jury, or its legal failure to function, before a special grand jury may validly present or indict in certain cases. Illustrations of such cases may be found in Alabama, Missouri, Arkansas, California, Texas, and other jurisdictions.

In some jurisdictions apparently a grand jury, as known at common law, is not necessarily required, because of certain special provisions or limitations in their constitutions. An example of such a jurisdiction is Illinois. Apparently a special grand jury has been permitted to function in Cook county contemporaneously with a regular grand jury; but

this is so because of certain statutory enactments which were authorized under special provisions in the constitution of that state.

In the case of *People* v. *Lieber*, 357 Ill. 423, at 426 and 427, it appears clearly that, in sec. 8 of the bill of rights (article 2) of the constitution of 1870 in Illinois, which corresponds generally to sec. 7 in ours, the following additional qualification expressly appears: *"Provided, that the* grand jury may be abolished by law in all cases." The supreme court of that state expressly recognized the grand jury as "an institution well known to the common law of England", with certain definite characteristics. But it construed the above provision of the constitution as giving to the legislature of that state complete control over the subject of grand juries saying: "Outside of its historical interest, however, the common law grand jury no longer has any legal significance in this State, as the legislature has passed certain statutes governing the subject matter and changing the common law rule." Other cases in that jurisdiction turn upon the same constitutional provision. See 22 Jour. Am. Inst. Crim. Law, 162, and cases cited.

But in our constitution there is no similar provision giving to the general assembly power to change the character and functions of the grand jury as they had been established at common law. Therefore the Illinois cases are not inconsistent with our conclusion as to the first question submitted to us.

In New York there also appears to be some authority for the convening of a special grand jury. However, we have been unable to find any case in that jurisdiction wherein the question presented to, and determined by, the court is the same as that which concerns us here. In the absence of such a case, we cannot consider the practice in New York, whatever it may be, as authority to support a view contrary to the one which we have reached on the basis of the necessary characteristics of a common law grand jury and the unqualified provision in sec. 7 of our constitution.

The only case we have found which seems to permit the contemporaneous functioning of a special grand jury with a regular grand jury in the same county is *State ex rel.* v. *Price,* 101 Ohio St. 50, 128 N. E. 173. There a statute was held to be constitutional which provided that a special grand jury might be convened in a county where a regular grand jury was supposed to be functioning. At first reading this case may seem to support a view opposite to ours, but there are several material distinctions to be kept in mind.

In the first place, the constitution of Ohio, in relation to the necessity for presentment and indictment by a grand jury, is not identical with ours. It has some qualifying language giving the legislature certain power in relation to the number of members constituting a grand jury. The constitution of Ohio, therefore, guarantees only a grand jury of such number of members as the legislature may fix, and does not guarantee that the accused will be presented or indicted by a grand jury as at common law constituted, which is the guarantee without qualification contained in sec. 7 of our constitution.

Secondly, from the language of the statute itself, it may be argued that, in contemplation of the legislature and law, the regular grand jury had failed or ceased to function. Thus construed, there would not be two common law grand juries functioning at the same time and place.

Thirdly, that was a litigated case in which the constitutionality of a specific enactment by the legislature was involved, and therefore that enactment was entitled to a presumption of constitutionality until the contrary was shown beyond a reasonable doubt. The court apparently rested its opinion on that ground. The questions before us are not presented by a litigated case, but only by a request for an advisory opinion, which is not concerned with existing legislation but with only proposed or suggested legislation.

Clearly, no presumption of its constitutionality is involved.

Fourthly, the attack on the validity of the statute in that case was made by the prosecuting attorney of a county and not by a person indicted by a special grand jury under the statute; and it is fairly clear that the attack was motivated by and mainly based on the fact that under the statute the attorney general of the state could virtually supersede the prosecuting attorney of any county in the prosecution of crime in that county.

The court does not really state or discuss the question now under discussion, the nearest that it comes to stating it being in the following sentence in *State* v. *Price, supra,* on page 59 (176): "We do not regard as persuasive the claim that two grand juries, acting independently of each other, would likely result in confusion; that each would nullify the official acts of the other, contrary to the spirit and public policy of the Constitution." The main reason that the court gives for this statement is in the following sentence at page 60 (176): "To argue that a county could have but one grand jury to investigate high crimes and misdemeanors would be equivalent to saying that it should have but one petit jury to try such high crimes and misdemeanors."

It seems to us that in this language the basic distinction between a grand jury and a petit jury is overlooked and that it does not meet the contention that the contemporaneous existence and functioning of two grand juries in the same county would deprive persons suspected of crime of a substantial part of the protection to which they are entitled under the constitution. For this reason and the others mentioned *supra,* we are of the opinion that this Ohio case is not authority against our conclusion that the legislature of this state has no power to authorize a special or additional grand jury to sit in the same county contemporaneously with the regular grand jury.

Our final conclusion is that question 1, as propounded to us and as above set forth, must be answered in the negative. Since questions 2 and 3 call for our opinion only in

the event that question 1 should receive an affirmative answer, it becomes unnecessary to give specific answers to questions 2 and 3.

EDMUND W. FLYNN,
WILLIAM W. MOSS,
ANTONIO A. CAPOTOSTO,
HUGH B. BAKER,
FRANCIS B. CONDON.