STATE *vs.* EDGAR H. PARADIS *et al.*

SAME *vs.* ROBERT GAUTHIER *et al.*

SAME *vs.* WILLIAM J. CONLEY *et al.*

SAME *vs.* PATRICK J. McCONAGHY *et al.*

SAME *vs.* JOSEPH McCAUGHEY *et al.*

FEBRUARY 18, 1941.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

## Ruling

These petitioners asked leave to file in this court petitions for *certiorari* to the superior court to bring up for review, in advance of trial, adverse rulings of that court on their pleas in abatement of, and their motions to quash, certain indictments returned against them by the grand jury for the counties of Providence and Bristol.

Petitioners also based their request on the further ground of the denial by the superior court of their motions to certify

to this court the question of the constitutionality of general laws 1938, chapter 506, of secs. 11, 14, 18, 29 and 35, as amended by section 1, chapter 700, public laws 1939, providing for the drawing of jurors, their obligations under their oaths, the composition of the grand jury for Providence and Bristol counties as one grand jury for both counties, and the continuous sitting of such grand jury beyond its normal term at the request of the attorney general.

After an informal examination of the numerous and involved allegations in the petitions, we issued citations to the petitioners to show cause why this court should exercise its discretion and permit the petitions to be filed. Notice of these citations was duly given to the attorney general. Pursuant thereto the petitioners and the attorney general appeared and were heard and briefs were submitted on the question as to whether we should issue the writ. Supplemental briefs of both parties were filed later, with our permission.

Ordinarily, on a request for leave to file a petition for *certiorari,* a prompt reply is given either denying or granting it. However, on account of the number of serious questions inherent in the petitions and of other extrinsic matters, it has not been possible to do so in this instance. In coming to our conclusion, it has been necessary to weigh and consider carefully the authorities cited to us and to make some further investigation on our own account. This has consumed much time; more than we would ordinarily give to a matter of this kind. But we felt compelled to devote such time and research to these petitions because petitioners' counsel most strenuously urged that grave consequences would follow, if petitioners were required to await the determination of trials under these indictments on their merits before bringing to this court for review the alleged errors of the superior court.

Petitions for *certiorari* are addressed to our discretion. Ordinarily the writ will not be issued where there is another

adequate remedy available to review the alleged errors of the court below or where the ruling or decision below is interlocutory. Petitioners concede these principles but they urge that their cases fall within the category of the following cases in which this court has, in the exercise of its final revisory and supervisory powers to correct and to prevent errors and abuses, treated certain circumstances as presenting an exception to the general rule and has granted the writ. *In re James Estate,* 64 R. I. 144, 11 A. 2d. 289; *Brickle* v. *Quinn,* 63 R. I. 120, 7 A. 2d. 890; *Conte* v. *Roberts,* 58 R. I. 353; *Union Mortgage Co.* v. *Rocheleau,* 51 R. I. 345; *Atlantic Mills* v. *The Superior Court,* 32 R. I. 285.

All of these cases were deemed by this court to be exceptions to the general rule, and in the interest of justice called for the issuance of writs of *certiorari* despite the fact that another remedy would have ultimately been available to review the alleged errors of the court below. However, this was because the court, under the circumstances before it in those cases, concluded that the ordinary remedy would not be really adequate. We think that this is particularly true of the above-cited *Brickle, Union Mortgage Co.* and *Atlantic Mills* cases which had to do with questions of pleading.

The case of *Conte* v. *Roberts, supra,* was put on the much stronger ground of preventing irreparable injury to the public welfare that would result from the sweeping character of an *ex parte* restraining order against the bureau of police and fire of the city of Providence, which petitioners alleged had been erroneously or improvidently issued by the superior court. In the face of such a danger we said that the petition presented questions "affected with a distinct public interest involving a public policy of proper enforcement of the criminal statutes." And we further concluded that such questions also made the case an exceptional one.

It ought to be observed here that while we issued the writ in the case of *In re James Estate, supra,* on the face of the

allegations contained in the petition, we afterward quashed the writ, following an opportunity to examine the record, because we found from such examination that the action of the court below was not final but interlocutory and that there were no exceptional circumstances to take the case out of the general rule. That case does not really belong in the list of those above cited, as our decision was tantamount to a refusal of the writ, although we had allowed the petition to be filed to bring up the record.

Petitioners in the instant cases seek first of all to bring themselves within the category of the above exceptional cases. They contend that their cases are clearly of this nature because they say that, if they are forced to go to trial before the alleged errors of the superior court are reviewed, they will suffer grave and unusual burdens; that severe hardships will be imposed upon them by the necessity, under which they will labor, of defending themselves against the unusual type of offense with which they are charged; that because there are one hundred sixty-five defendants like themselves, these cases are most exceptional; and finally, that because of such number of defendants and the novelty and uncertainty of the questions raised, it is in the public interest and for the welfare of the state that these questions be determined by this court in advance of trial and thus probably save the state great and needless expense. In support of this last contention petitioners cite *O'Neil* v. *Demers,* 44 R. I. 504, as an example of what was done on an occasion when the question of the validity of a new statute was brought in question on the record in the prosecution of several criminal complaints under such statute in the district court of the sixth judicial district. Petitioners' counsel stated that in that instance all further prosecutions were suspended by the then attorney general until the questions which had been certified to this court were determined.

We are unable to agree with the above contentions. At first blush they appear persuasive and seem to receive sup-

port from some, if not all, of the cases cited. Upon closer examination and consideration of both the contentions and the cases, however, it is clear to us that the instant petitions are wanting in the allegations of such facts and circumstances as would bring them within the exception to the general rule and warrant the granting of these petitions. The fact that these petitioners may be put to the expense and inconvenience of a trial in the superior court, which may later prove to have been vitiated by error or errors in proceedings preliminary to actual trial before a jury, is not unusual. That is one of the recognized hazards of a trial, either civil or criminal. The fact that there are an unusually large number of these defendants, all charged with the commission of the same crime, does not afford a reason for treating their cases differently from the case of a single defendant or a small number of defendants. The so-called unusual type of offense charged is scarcely a good ground to justify *certiorari,* especially in view of the fact that the crime actually charged is the crime of conspiracy, well known to the common law.

If the petitioners' complaint is really against the unusual or ambiguous manner in which it is charged that the crime was allegedly committed, it would seem that proper pleas or motions for bills of particulars ought to enable them to protect themselves. Should they consider that they have been erroneously deprived of any constitutional right to be informed of the nature and cause of the accusation against them and are tried and found guilty, they have the usual adequate remedy for review by bills of exceptions.

That the petitioners will be put to the expense and inconvenience of defending themselves in trials under indictments that may later prove to have been vitiated by error is not an uncommon incident of criminal prosecutions. That is a burden which all must bear under our system of judicial procedure. If we were to allow *certiorari* on this ground, the

requests for this writ would certainly be the rule rather than the exception, and there would be little left of the well-established principle of our appellate procedure that this court will not review a cause piecemeal. *Troy* v. *Providence Journal Co.,* 43 R. I. 22. In *Chew* v. *Superior Court,* 43 R. I. 194, this court said: "It may be argued that, in the event the petitioner's said exception should be finally determined to have been well taken, an expense of time and money has been incurred which could have been avoided by settling the question of law before going to trial. The same argument could be advanced in favor of certifying all substantial demurrers to this court for determination before trial, but the legislature has prescribed a different procedure."

To the petitioners' contention that it is in the interest of the state and the public welfare to review these questions now rather than after a trial on the merits, the sufficient answer is that the attorney general, who represented the state in these proceedings, opposed these petitions and desired the cases to proceed in the regular way. Whether or not it would be a sounder policy to suspend the trials of the petitioners' cases until a determination of these questions by this court, in order to avoid incurring what might prove to be needless expense to the state of numerous trials, it is not for us to say. The attorney general, who is the officer whom the people of the state chose to make such decisions of policy in the interest of the state, has undertaken to discharge that duty by opposing these petitions; and the petitioners cannot be heard to argue a contrary source of action in the interest of the state.

In this respect *O'Neil* v. *Demers, supra,* differs from these cases. The attorney general *acquiesced* in the desire of the petitioners that trials under the questioned statute in that case be stayed until this court decided whether or not the statute was valid and constitutional. Had the attorney general taken a like view in petitioners' cases, he would not

have opposed their motions to certify these questions. On the contrary, it is more likely that he would have made the same motion himself, because the legislature has conferred upon the attorney general the authority to have certified to this court for determination in a civil or criminal proceeding any question of the constitutionality of a statute, or any question of doubt and importance affecting the merits of the pending controversy if, in his opinion, it is in the interest of the state to have such question so determined. G. L. 1938, chap. 545, § 6. But he is the only one who may invoke it on that ground. Therefore, as long as the attorney general adheres to the position which was assumed in behalf of the state in the hearing before us, the petitioners' situation is in no way comparable to that of the petitioners in the *O'Neil* cases, *supra.*

There remains for consideration only a final contention of the petitioners here, to the effect that the refusal of the trial justice to certify to this court the question of the constitutionality of the sections of P. L. 1939, chap. 700, above referred to, was an abuse of his discretion and was, as such, under the authority of *State* v. *Fay,* 65 R. I. 304, 14 A. 2d. 799, open to review by *certiorari.* A careful reading of our opinion in that case will show that in granting *certiorari* we were confronted with a most unusual situation and one entirely different from that now before us. These petitioners have obtained rulings on each question which they raised in the superior court and have taken exceptions thereto. They will have an opportunity at the appropriate time to present all of these questions to this court for review if they are found guilty. The question of the constitutionality of P. L. 1939, chap. 700, is also saved by exception. Also, it may be reserved for certification forthwith to this court in accordance with G. L. 1938, chap. 545, § 2, if petitioners are found guilty.

In all of these respects, petitioners in the *Fay* case were without a remedy. They raised the question of the constitu-

tionality of G. L. 1938, chap. 625, § 72, when they were summoned to appear for sentence after conviction, which was as promptly as was possible; and thereupon they moved that said question be certified to this court. The superior court denied this motion and notified defendants that it intended to act under said statute. Under the circumstances, there appeared to be no other remedy by which petitioners could bring this question to this court for determination, despite the fact that it was a constitutional question. The attorney general conceded that in these circumstances the only remedy open to the petitioners was to apply to this court for *certiorari*. Thereupon we granted the writ in the exercise of our general revisory and supervisory powers to correct and prevent errors and in the furtherance of justice and the due administration of the law.

We have tried to discuss most of the important contentions made by these petitioners. Those concerning the constitutional rights of the petitioners, which they claim were invaded by the manner in which the grand jurors were drawn for service, and also because of the misconduct of those jurors acting as a grand jury, in divulging information that had come to them, relate to the questions of law which were raised by petitioners' motions to quash and their pleas in abatement; and those contentions have been kept in mind by us in the earlier part of this discussion.

It is pertinent and important to observe here that we have not considered at all, or decided expressly or by implication, the merits of any question which these petitioners, as defendants, raised in the superior court and on which adverse rulings were made by the trial justice to which they duly excepted.

With this reservation and for the reasons above given, we decline to grant petitioners leave to file these petitions and the same are hereby returned to them.

*Louis V. Jackvony,* Attorney General, *James O. Watts,* Third Asst. Atty. Gen., for State.

*Hurley, Moriarty & Connly, George Hurley, Walter V. Moriarty, John W. Moakler, Jr., William S. Flynn,* for petitioners.