274 A.2d 732.

STATE *vs.* GERARD THOMAS OUIMETTE.

MARCH 12, 1971.

PRESENT: Paolino, Powers, Joslin and Kelleher, JJ.

Powers, J. This is an indictment charging the defendant with possession of a firearm after conviction of a crime of violence in violation of the provisions of G. L. 1956, §11-47-5, as amended.[1] Prior to trial, the defendant moved to suppress as evidence the firearm seized at the time of his arrest, together with all the testimony and exhibits relating thereto. A hearing was held thereon before a justice of the Superior Court who denied the motion, and from that decision defendant purported to prosecute a bill of exceptions to this court under the provisions of P. L. 1968, chap. 234. After said bill of exceptions had been transmitted to this court, the Attorney General moved to dismiss on the grounds that said statute permitting interlocutory appeals by the state was not available to defendant.

On consideration of arguments made in connection with the Attorney General's motion, the same was granted on

---

[1]The applicable provisions as amended by P. L. 1959, chap. 75, sec. 1 are as follows:

"11-47-5. Possession of arms by person convicted of crime of violence or who is a fugitive from justice.—No person who has been convicted in this state or elsewhere of a crime of violence or who is a fugitive from justice shall purchase, own, carry, transport or have in his possession or under his control any firearm."

February 26, 1969, and the case was remitted to the Superior Court for further proceedings. See *State* v. *Ouimette,* 105 R. I. 777, 251 A.2d 412.

Thereafter the case was assigned for trial to April 10, 1969, and on that day defendant moved to vacate the assignment on the ground that two days earlier the news media had so inflamed the public to the prejudice of defendant as to deny him a fair trial. Certain exhibits were received by the trial justice in connection with this motion, and after consideration thereof and arguments thereon, the motion to vacate the assignment was denied. The defendant's exception to this ruling was duly noted and the case was tried before a jury which rendered a verdict of guilty as charged.

From the denial of the motion to suppress; the denial of the motion to vacate; to numerous evidentiary rulings, as well as to certain instructions as given, and other instructions requested but not given, the defendant prosecuted a bill of exceptions to this court.

After a careful and painstaking consideration of all of defendant's numerous exceptions, and the arguments made in support thereof, we are persuaded that each, save for that taken to the denial of his motion to suppress, is so lacking in merit as to require no discussion.

Turning then to a consideration of his exception taken to the denial of his motion to suppress, we are frank to acknowledge that the question presented is troublesome. The evidence adduced at the hearing on the motion establishes that on January 8, 1968, defendant left a 1967 white Cadillac automobile parked illegally in front of a building, a portion of which is rented by the 13th Ward Independent Club, chartered by the State of Rhode Island, for the purpose of advancing the social, economical, and political betterment of the 13th Ward.

It is undisputed that defendant, on leaving the car,

entered that portion of the building available to the 13th Ward Independent Club. What was disputed was whether defendant was the operator of the car in question, but the trial justice found as a fact that he was. He did so on the basis of evidence he accepted as more credible, and from our examination of the probative evidence we cannot say that he was clearly wrong. *State* v. *Leavitt*, 103 R. I. 273, 237 A.2d 309.

While the car was thus illegally parked, two state police officers came upon the scene. One of them, Detective Vincent Vespia, recognized the auto as customarily driven by defendant. On two prior occasions this officer had found the same car illegally parked in the vicinity of said club, and on those occasions entered the club unhindered and unchallenged for the purpose of requesting defendant to move the car. Acting pursuant to his previous experience Detective Vespia, accompanied by his fellow officer, entered the club for the stated purpose of again calling on defendant to remove the car which was obstructing traffic on the public highway.

It is appropriate at this juncture to note that defendant was well-known to the officers and they were fully cognizant that he had a criminal record which included conviction of a crime of violence.

On entering the club, for the purpose aforesaid, Detective Vespia observed defendant and a man named Anthony Caruso standing at a bar with their backs to him. Vespia then saw Caruso pass a gun to defendant. Simultaneous with this incident defendant apparently became aware that others were present and turned in such a manner as to point the gun in the direction of the officers. They rushed defendant who tossed the gun so that it landed on a case of soda. The defendant was seized, handcuffed, given the Miranda warnings and placed under arrest. Other police

officers were called and the gun, after being visually examined and photographed, was impounded as evidence.

The arrest was made on the authority of §12-7-4(b) which provides that a peace officer may arrest, without a warrant, any person committing a felony in his presence. The firearm in question was seized as an incident to the arrest.

In seeking to suppress the firearm thus seized, and all evidence in connection therewith, defendant argues that such seizure was constitutionally prohibited by section 6, article I of the Rhode Island constitution and by section 1 of article XIV of amendments to the United States Constitution. He predicates this on the proposition that the weapon seized was the fruit of an illegal arrest. This is so, he argues, because the entry without a warrant by the officers upon the private club premises was illegal. In support thereof he relies upon a line of decisions, prominent among which is *Wong Sun* v. *United States,* 371 U.S. 471, 9 L.Ed.2d 441, 83 S.Ct. 407. There, the United States Supreme Court reiterated the principle that evidence seized in connection with a purported arrest made upon the premises of defendant which the police officer was without warrant to enter could not constitute proof against the victim of entry.

This brings us to a consideration of the circumstances which the instant defendant argues made his arrest unlawful. He adduced uncontradicted evidence at the hearing on his motion that the 13th Ward Independent Club was open only to card carrying and dues paying members of the club and their guests, and that he was such a member. There is no claim that Detective Vespia was a member of the club or that he possessed any warrant to enter therein. Here then, defendant vigorously argues, is a classic case of an unlawful entry by police officers of constitutionally protected private premises.

We are in full accord with and support the principle repeatedly stated in the cases upon which defendant relies, but we cannot agree that it is applicable to the particular facts in the case at bar. We have heretofore acknowledged in this opinion that the case is a close one, but of fact and not of law. An analysis of all the cases relied on by defendant discloses that the arresting officer, in each of those cases, entered private premises on a suspicion that the person ultimately arrested was committing a crime, and having entered, searched for, and/or seized the evidence to support such an arrest. That is not this case.

Here, Detective Vespia was confronted with the blocking of traffic by a car which he knew defendant customarily operated. From previous experience he had reasonable grounds to believe defendant to be on the premises in question, in that he had been confronted with a similar situation on two previous occasions, one of which was admitted by defendant. On each such occasion he had found the door unlocked, apparently open to all comers, and his entrance neither questioned nor hindered. Further, Detective Vespia's entrance into the club on the occasion in question, was not made for the purpose of conducting a search nor to make an arrest. What happened was that on entering the premises, under the related circumstances, Detective Vespia was confronted with one known by him to be convicted of a crime of violence come into open possession of a gun, contrary to the provisions of §11-47-5, as amended. It would make a mockery of law enforcement to hold that under such circumstances, as are here present, that what can reasonably be argued to be a meritorious entry by the police officers, cloaks the perpetration of an open commission of a felony with constitutional immunity from arrest.

We hold, therefore, that the arrest of the instant defendant was not unlawful, and that as a consequence, the

seizure of the gun and related evidence were not inadmissible as fruits of an unlawful arrest.

So holding, we are not unmindful of the sanctity of these provisions which are designed to protect the people against unlawful arrests, searches and seizures.

But constitutional safeguards, like every rule of law, are rooted in reason and are not to be extended to cover circumstances in which their applicability would be lacking in reason, if not absurd.

Having held that all of defendant's exceptions are without merit, we turn sua sponte to a circumstance of the trial in the Superior Court which we have concluded warrants consideration. The state's first witness was the arresting officer, Detective Vespia. During the first day of trial, this witness, in direct examination, was asked a total of 210 questions. Defense counsel objected, took exception and moved to strike the answers to 187 of these questions, all of which, except for a very few, were predicated upon the admissibility of evidence relating to the aforesaid entry, arrest, and seizure.

Early in the first day, the trial justice, in recognition of the potential prejudice to defendant through the constant rising and objection by counsel, admonished the jury that defense counsel was performing his obligation under the law in interposing these repeated objections. To further minimize such potential prejudice and distraction, he permitted defense counsel to make his objections without rising.

On the second day of trial, defense counsel objected, took exception and moved to strike the answers to five of the first six questions posed to Detective Vespia. At this juncture, the trial justice, sua sponte, in the interests of orderly procedure, and after an elaborate explanation to the jury, directed defense counsel to refrain from interposing further objections on the stated grounds. He further directed coun-

sel to move to strike the entire line of testimony upon its completion and to take exception to the denial of that motion in order to preserve his client's right to appellate review of the underlying question.

We concur in the observations made by the trial justice which impelled him to resort to the more expeditious procedure, and feel that a continuation of the heretofore established practice in criminal proceedings requiring an objection and exception to every question sought to be excluded, serves no useful purpose.

As a consequence, in the exercise of our general supervisory jurisdiction, we hereby direct that henceforth the discretion conferred on a trial justice by the last sentence of Super. R. Civ. P. 46 shall be applicable in all criminal trials.

We do not, however, thereby eliminate the necessity for taking an exception to any adverse ruling that the party objecting desires to bring on the record for appellate review.

All of the defendant's exceptions are overruled and the case remitted to the Superior Court for further proceedings.

Motion to reargue denied.

ROBERTS, C. J., did not participate.

*Herbert F. DeSimone,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, *Scott K. Keefer,* Special Asst. Attorney General, for plaintiff.

*Charles Butterfield, Jr.,* for defendant.