405 A.2d 3.

STATE *vs.* JOEL JENISON.
STATE *vs.* MICHELE G. CORY.

AUGUST 1, 1979.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, and Doris, JJ.

JOSLIN, J. The defendants, Joel Jenison and Michele G. Cory, challenge the constitutionality of the composition and operation of the first statewide grand jury that was convened in Providence pursuant to G.L. 1956 (1969 Reenactment) ch. 11.1 of tit. 12, as enacted by P.L. 1974, ch. 221, §4. The grand jury sat in that city and heard evidence regarding crimes allegedly committed by the defendants in Kent and Washington Counties. It subsequently met in each of those counties and at those sessions, on the basis of evidence heard in Providence, returned indictments against each defendant for offenses allegedly committed therein. Motions to dismiss were then filed by both defendants in both counties. In Washington County, Judge Rodgers denied the motions and the defendants appealed. In Kent County, Judge McKiernan, instead of ruling on the motions, invoked §9-24-27 and certified three questions to this court for hearing and determination. Those questions present substantially the same issues as does the appeal in the Washington County case.[1] They are:

"1. Can a statewide grand jury sitting in Providence County and not in attendance in Superior Court in the County of Kent validly, with respect to proper venue and due process, consider an indictment based on an alleged crime committed in Kent County.

"2. Can a statewide grand jury sitting in Providence County validly consider an indictment where the Defendants have been bound over to a Kent County grand jury which jury did not return an indictment.

"3. Is the clause in Title 9, Chapter 9, Section 3 of the General Laws of Rhode Island 1956, as amended, which mandates the exemption of 'the president,

---

[1]The appeal, in addition, challenges the allegedly prejudicial presence of a policeman on the grand jury and the alleged disproportionate composition of the grand jury in comparison with the number of voters in the county, contrary to the statutory requirement of proportionality. General Laws 1956 (1969 Reenactment) §12-11.1-4, as amended by P.L. 1977, ch. 94, §1.

professors, tutors and students of recognized universities and colleges' from serving as jurors, unconstitutional on its face and as applied in that it violates:

a. The due process clause of the 14th Amendment of the Constitution of the United States;

b. The right to trial by an impartial jury guaranteed by the 6th Amendment of the Constitution of the United States as applied to the States by the 14th Amendment;

c. Article I §10 of the Rhode Island Constitution which guarantees to the criminally accused the right to enjoy a trial by 'an impartial jury' and not to 'be deprived of life, liberty, or property, unless by the judgment of his peers, or the law of the land.''

At the threshold is the procedural problem of whether the cases are properly before us. Clearly, the appeal from Judge Rodgers' denial of the motion to dismiss is not. Because that ruling was interlocutory, the appeal was premature and therefore cannot be entertained. *State* v. *Ferrara*, 101 R.I. 377, 378, 224 A.2d 43, 44 (1966); *State* v. *Ryan*, 64 R.I. 92, 95, 10 A.2d 451, 452 (1940).

The defendants argue, however, that notwithstanding its prematurity, G.L. 1956 (1969 Reenactment) §9-24-32, as amended by P.L. 1972, ch. 169, §10, allows them to challenge an interlocutory order in this court. Although in specified circumstances that statute permits the state to prosecute an appeal from an interlocutory ruling, it is unavailable to a defendant for that purpose. *See State* v. *Ouimette*, 108 R.I. 283, 284, 274 A.2d 732, 733 (1971); *State* v. *Johnson*, 113, R.I. 917, 319 A.2d 102 (1974).

No more bothersome is whether the certification procedures of §9-24-27 are appropriate. The rules governing the use of those procedures are well established. Only recently we referred to them in *State* v. *Perry*, 118 R.I. 89, 94, 372 A.2d 75, 78 (1977), where we said that:

> "before certifying a question, the trial justice must determine, in his discretion, that the question is of doubt and importance and that '* * * aided by the research and arguments of counsel [he] is unable to reach a satisfactory conclusion * * *.' "

In that case, we also said:

> "The certification process contemplated by §9-24-27 entails a total stoppage of a trial pending determination of the certified question. Such a drastic step may only be taken after every effort of court and counsel has been exhausted and no satisfactory answer reached. Only then may a trial justice, in his discretion, halt trial proceedings and certify a question to the Supreme Court." *Id.* at 94-95, 372 A.2d at 78-79.

The trial justice in this case had the benefit not only of oral arguments and comprehensive memoranda from both parties, but also of the transcript of the hearing conducted in Washington County before Judge Rodgers. Still he felt he was unable to reach a satisfactory conclusion. The state nevertheless argues that the issues were "easily resolvable" and that Judge McKiernan should have followed Judge Rodgers' example. But merely because one judge resolved the issues does not mean the questions were "easily resolvable" or that another judge abused his discretion in not having done likewise.

Moreover, as defendants suggest, Judge McKiernan must have been aware that defendants' constitutional challenges, if sound, would invalidate not only indictments against them but all others returned by this grand jury. In this context, discretionary certification before trial pursuant to §9-24-27 was particularly appropriate to avoid wasting valuable judicial time in the prosecution of innumerable possibly faulty indictments.[2]

---

[2]In *State v. Paradis*, 66 R.I. 152, 18 A.2d 342 (1941), 165 criminal defendants initiated certiorari proceedings to review the Superior Court's refusal to certify constitutional challenges to the composition of the grand jury that indicted them. Despite the defendants' argument that it was against the public policy to try all 165

In view of all the circumstances, we believe Judge McKiernan did not abuse his discretion in certifying the constitutional questions. We need only consider the third question, however, because our determination of it is dispositive. That question challenges the constitutionality of the jury commissioner's application of G.L. 1956 (1969 Reenactment) §9-9-3, as amended by P.L. 1957, ch. 124, §1. That Act, in pertinent part, exempts from grand- or petit-jury service "the president, professors, tutors, and students of recognized universities and colleges."

The Federal Constitution does not guarantee the right to a grand jury in a state criminal prosecution, *Hurtado v. California*, 110 U.S. 516, 4 S. Ct. 111, 28 L. Ed. 232 (1884), but if a state chooses to provide such a system, "it must hew to federal constitutional criteria," *Carter v. Jury Commission*, 396 U.S. 320, 330, 90 S. Ct. 518, 523, 24 L. Ed. 2d 549, 557 (1970), at least with respect to the due-process and equal-protection clauses of the fourteenth amendment. *Peters v. Kiff*, 407 U.S. 493, 501, 92 S. Ct. 2163, 2168, 33 L. Ed. 2d 83, 93 (1972). Thus, "a [S]tate cannot, consistent with due process, subject a defendant to indictment or trial by a jury that has been selected in an arbitrary and discriminatory manner, in violation of the Constitution and laws of the United States." *Id.* at 502, 92 S. Ct. at 2168, 33 L. Ed. 2d at 94.

---

of them only to have the indictments later found unconstitutional, the trial justice elected not to certify. We refused to review that denial on certiorari. In response to the applicants' argument that it was in the interest of the state and the public welfare to review the questions raised then rather than after a trial on the merits, we observed that the Attorney General had opposed issuance of the writ and had urged that the cases proceed in the regular way. It was his responsibility, we said, to determine whether it would be sounder policy to suspend the trial of the cases pending a determination of the constitutional questions to save the state what might prove to be the needless expense of numerous trials. In ruling otherwise in this case, we still recognize that the possibility that the state will incur the needless expense of numerous trials on possibly invalid indictments remains the Attorney General's responsibility. We have as our responsibility, however, to expedite the trial of cases and to clear the dockets so that litigants can have speedy trials and a prompt day in court.

In developing that rule, the Supreme Court on equal-protection grounds has consistently struck down the systematic exclusion of racial groups or identifiable minorities from service on grand or petit juries. *E.g., Castaneda* v. *Partida,* 430 U.S. 482, 97 S. Ct. 1272, 51 L. Ed. 2d 498 (1977); *Alexander* v. *Louisiana,* 405 U.S. 625, 92 S. Ct. 1221, 31 L. Ed. 2d 536 (1972); *Whitus* v. *Georgia,* 385 U.S. 545, 87 S. Ct. 643, 17 L. Ed. 2d 599 (1967); *Pierre* v. *Louisiana,* 306 U.S. 354, 59 S. Ct. 536, 83 L. Ed. 757 (1939); *Strauder* v. *West Virginia,* 100 U.S. 303, 25 L. Ed. 664 (1879); *see Swain* v. *Alabama,* 380 U.S. 202, 85 S. Ct. 824, 13 L. Ed. 2d 759 (1965); *State* v. *Clark,* 112 R.I. 270, 275, 308 A.2d 792, 795 (1973). It has also embraced the broader principle that a criminal defendant is "entitled, as a matter of due process, to a jury drawn from a representative cross section of the community." *Johnson* v. *Louisiana,* 406 U.S. 356, 378, 32 L. Ed. 2d 152, 169 (1972) (Powell, J., concurring); *see Apodaca* v. *Oregon,* 406 U.S. 404, 410-11, 92 S. Ct. 1628, 1632-33, 32 L. Ed. 2d 184, 191 (1972). This principle applies to both grand and petit juries. *Peters* v. *Kiff,* 407 U.S. at 502, 92 S. Ct. at 2168, 33 L. Ed. 2d at 94; *Alexander* v. *Louisiana,* 405 U.S. at 636, 92 S. Ct. at 1228, 31 L. Ed. 2d at 545 (Douglas, J., concurring); Sperlich & Jaspovice, *Grand Juries, Grand Jurors and the Constitution,* 1 Hastings Const. L. Q. 63 (1974); *cf. Taylor* v. *Louisiana,* 419 U.S. 522, 526-33, 95 S. Ct. 692, 695-99, 42 L. Ed. 2d 690, 695-700 (1975) (sixth amendment requires petit jury drawn from fair cross section of community).

Moreover, in cases arising in the federal courts, the Court, in the exercise of its supervisory power, has applied the fair cross-section principle to strike down the systematic exclusion from both grand and petit juries of distinct groups in the community such as daily wage earners, *Thiel* v. *Southern Pacific Co.,* 328 U.S. 217, 66 S. Ct. 984, 90 L. Ed. 1181 (1946), or women, *Ballard* v. *United States,* 329 U.S. 187, 67 S. Ct. 261 91 L. Ed. 181 (1946).

The fair cross-section principle has been supported in both the grand- and petit-jury contexts by reference to the very

nature of the common-law jury. Thus, the Court said in *Carter* v. *Jury Commission*, 396 U.S. at 330, 90 S. Ct. at 524, 24 L. Ed. 2d at 558, that "the very idea of a jury," whether it be a grand or petit jury, is " 'a body truly representative of the community,' " and in *Pierre* v. *Louisiana*, 306 U.S. at 358, 59 S. Ct. at 539, 83 L. Ed. at 760, it noted that "[i]ndictment by Grand Jury and trial by jury cease to harmonize with our traditional concepts of justice at the very moment particular groups, classes or races—otherwise qualified to serve as jurors in a community—are excluded as such from jury service." And in *Thiel* v. *Southern Pacific Co.*, 328 U.S. at 220, 66 S. Ct. at 985, 90 L. Ed. at 1184-85, the Court explained:

> "The American tradition of trial by jury, considered in connection with either criminal or civil proceedings, necessarily contemplates an impartial jury drawn from a cross section of the community. *Smith* v. *Texas*, 311 U.S. 128, 130; *Glasser* v. *United States*, 315 U.S. 60, 85. This does not mean, of course, that every jury must contain representatives of all the economic, social, religious, racial, political and geographical groups of the community; frequently such complete representation would be impossible. But it does mean that prospective jurors shall be selected by court officials without systematic and intentional exclusion of any of these groups."

The fourteenth-amendment guarantee of an impartial jury as an aspect of due process is as applicable to the grand as to the petit jury because both perform a vital function in protecting the criminal defendant. This court recognized that function when, speaking of the common-law grand jury in *Opinion to the Governor*, 62 R.I. 200, 4 A.2d 487 (1939), it said:

> "One of its main purposes was to protect the rights of the individual citizen against possible oppression by the crown or its agencies in the prosecution of crimes; or, as has been elsewhere stated, to safeguard the individual's

rights against private malice, party passion or governmental abuse."[3] *Id.* at 203, 4 A.2d at 488; approved in *In re Buxton*, 111 R.I. 480, 482, 304 A.2d 350, 352 (1973).

The rationale for affording an accused the protection of a judgment reached by the fair and impartial body of his peers that make up a petit jury applies as well to an indictment brought by the grand jury that performs the critical function -of deciding whether to bring the initial accusation. Thus, a state electing to use the grand jury system must abide by the requirements of due process in assuring that the selection process draws jurors from a fair cross section of the community.

The ramifications of the fair cross-section requirement in defining those cognizable classes that may not be excluded have been explicated in the analogous areas of the sixth-amendment right to an impartial jury trial and the Supreme Court's constitutional and supervisory power over federal grand juries. Indeed, the reasoning that prohibits the arbitrary exclusion of cognizable classes from jury service has been fundamentally the same whatever the constitutional context. The concept of a cognizable class for these purposes includes "economic, social, religious, racial, political and geographical groups." *Thiel* v. *Southern Pacific Co.*, 328 U.S. at 220, 66 S. Ct. at 985, 90 L. Ed. at 1185. Groups whose exclusion from grand or petit-jury service have been found to violate the fair cross-section requirement in the con-

---

[3]This language is strikingly similar to the language used in *Taylor* v. *Louisiana*, 419 U.S. 522, 530, 95 S. Ct. 692, 698, 42 L. Ed. 2d 690, 698 (1975) in defining the function of the petit jury:

"The purpose of a jury is to guard against the exercise of arbitrary power—to make available the commonsense judgment of the community as a hedge against the overzealous or mistaken prosecutor and in preference to the professional or perhaps overconditioned or biased response of a judge. [citation omitted] This prophylactic vehicle is not provided if the jury pool is made up of only special segments of the populace or if large, distinctive groups are excluded from the pool."

Both bodies perform a vital function in protecting individual rights, and are therefore subject to high constitutional standards of fairness.

text of both the sixth and fourteenth amendments or of the court's supervisory jurisdiction over the federal courts include women, *Duren* v. *Missouri,* 47 U.S.L.W. 4089 (1979); *Taylor* v. *Louisiana;* daily wage earners, *Thiel* v. *Southern Pacific Co.,* both *supra;* the less educated, *United States* v. *Butera,* 420 F.2d 564 (1st Cir. 1970); the "young adults," *id.,* various racial and ethnic groups, *Peters* v. *Kiff, supra; Hernandez* v. *Texas,* 347 U.S. 475, 74 S. Ct. 667, 98 L. Ed. 866; *Smith* v. *Texas,* 311 U.S. 128, 61 S. Ct. 164, 85 L. Ed. 84 (1940), and teachers, *Colvin* v. *Commonwealth,* 570 S.W. 2d 281 (Ky. 1978).

The group excluded from grand-jury service in this case is comprised of the presidents, professors, tutors, and students of recognized colleges or universities. A transcript of the proceedings before Judge Rodgers that was introduced into evidence at the hearing before Judge McKiernan discloses that the governing statute conferring only an exemption,[4] was applied by the jury commissioner as an exclusion. That official's testimony revealed that prior to the selection of this grand jury a questionnaire was sent to all prospective grand jurors, that in one of the questions the recipient was asked to

---

[4]General Laws 1956 (1969 Reenactment) §9-9-3 provides:

"The following persons shall be exempted from serving as jurors, namely: the members of congress from the state of Rhode Island, the general officers of the state, the members and officers of the general assembly during their tenure of office irrespective of whether the general assembly is in session or not, the warden, assistant warden, deputy wardens, correctional officers, classification counselors, youth home life supervisors, the supervisor and members of the committing squad, and the superintendent of any institution under the management and control of the department of corrections, the superintendent of any institution under the management and control of the department of social and rehabilitative services, the jury commissioner and his assistants, the justices of the state and United States courts, clerks of said courts, practicing attorneys-at-law, sheriffs, deputy sheriffs, marshals, deputy marshals, members of any paid police force of the state or of any city or town, members of any paid fire department of any city or town, priests, ministers, rabbis and others holding ecclesiastical office in religious organizations, authorized Christian Science practitioners and readers respectively, every member of the federally recognized national guard shall be exempt from jury duty only while actually on military duty on orders of the U.S. department of defense or on orders of the governor, or who is in receipt of such orders to military duty, *the president, professors, tutors, and students of recognized universities and colleges.*" (Emphasis added.)

list his present occupation or profession, and that the person was automatically excluded if the response to that question indicated that his occupation or profession fell into one of the exempt categories. The exclusion was routine and was effectuated without regard to whether the person, by his response to a later question, claimed the exemption. Indeed, under the practice, the only way an individual in the exempt category could serve was by acting affirmatively to waive the exemption. In effect, then, the system operated to exclude the targeted group entirely from service.

The state is, of course, "free to grant exemptions from jury service to individuals in case of special hardship or incapacity and to those engaged in particular occupations the uninterrupted performance of which is critical to the community's welfare." *Taylor* v. *Louisiana,* 419 U.S. at 534, 95 S. Ct. at 700, 42 L. Ed. 2d at 700; *Rawlins* v. *Georgia,* 201 U.S. 638, 26 S. Ct. 560, 50 L. Ed. 899 (1906). Nonetheless, a jury selection system that entirely excludes an identifiable and cognizable class playing a major role in the community, without a rational reason therefor, impermissibly offends the fair cross-section requirement and cannot be tolerated. *See Taylor* v. *Louisiana,* 419 U.S. 522, 530, 95 S. Ct. 692, 697-98, 42 L. Ed. 2d 690, 698 (1975).

We believe that the academic community here excluded is such a cognizable class. *See Colvin* v. *Commonwealth,* 570 S.W.2d 281, 282 (Ky. 1978) (teachers are a cognizable class that may not be excluded). *But see State* v. *Porro,* 158 N.J. Super. 269, 385 A.2d 1258 (1978), *cert. denied,* 47 U.S.L.W. 3408 (1978) (students are not a cognizable class). It is estimated to constitute at least 5 to 10 percent of the potential jury pool,[5] and it is identifiable and distinguishable from

---

[5]Although not as large as the class excluded in *Taylor* v. *Louisiana,* 419 U.S. 522, 95 S. Ct. 692, 42 L. Ed. 2d 690 (1975), which included 53 percent of the eligible population, we believe that this group is sufficiently large to fulfill the cognizability requirement. When a class is entirely excluded, we believe that its size is determinative only as one aspect of showing that it is a distinct and identifiable community group. That it is relatively small cannot justify total exclusion.

other social groups by its higher level of educational attainment, *cf. United States* v. *Butera*, 420 F.2d 564 (1st Cir. 1970) (the less educated), and by a possibly greater liberality of thought.[6]

It is unnecessary, however, to speculate on the particular qualities shared by this group that are missing from the spectrum of views on a jury that excludes its members. It is sufficient to note that

---

[6]The Supreme Court has imposed on the defendants the initial burden of demonstrating the existence of purposeful discrimination. *E.g., Whitus* v. *Georgia*, 385 U.S. 545, 550-51, 87 S. Ct. 643, 646-47, 17 L. Ed. 2d 599, 603-04 (1967); *Henandez* v. *Texas*, 347 U.S. 475, 480-81, 74 S. Ct. 667, 671-72, 98 L. Ed. 866, 871 (1954). Such purposeful discrimination is found when a jury commissioner deliberately excludes certain groups, *e.g., Thiel* v. *Southern Pacific Co.*, 328 U.S. 217, 66 S. Ct. 984, 90 L. Ed. 1181 (1946) (daily wage earners excluded); *Glasser* v. *United States*, 315 U.S. 60, 83-87, 62 S. Ct. 457, 470-73, 86 L. Ed. 680, 706-08 (1942) (all women not members of League of Women Voters excluded); *see State* v. *Clark*, 112 R.I. 270, 275, 308 A.2d 792, 795 (1973). Once such a showing is made the defendant has made out a prima facie case and it becomes the state's obligation to rebut it.

In this case the defendants introduced statistics, drawn from United States census reports and other statistical abstracts, indicating that in 1977, 3,716 professors and instructors worked at recognized Rhode Island colleges and universities. In the same year, 63,241 students were enrolled in recognized Rhode Island colleges and universities. In 1975, furthermore, 11,917 Rhode Island residents were enrolled in out-of-state colleges and universities. This list yields a total of approximately 78,874 members of the class subject to the exemption. Because only those registered voters over the age of 21 are eligible for grand jury service, however, the exclusion applies to a smaller number.

The defendants suggest that a conservative estimate indicates that from 25,000 to 50,000 members of the academic community of 78,874 are registered voters over 21. This number would constitute from 5 to 10 percent of the 544,922 registered voters in Rhode Island in 1976. The figure is probably much higher than that, because a substantial percentage of Rhode Island's registered voters are also between 18 and 21, and thus ineligible for jury service.

The defendant also suggests looking at the excluded class as "the better educated," following the reasoning of *United States* v. *Butera*, 420 F.2d 564 (1st Cir. 1970). From this perspective, census figures for 1970 show that 91,074 persons 25 years or over had some education beyond high school. In the same year, 34,915 were enrolled in Rhode Island colleges, contributing to a total of 125,989 members of an "educated class." In that year there were also 2,023 teachers in Rhode Island colleges and universities. Thus, the 36,938 students and professors represented a total of 29 percent of the "better educated" class that was excluded from jury service.

The state has made no serious attempt to rebut defendants' prima facie showing of a purposeful discrimination.

> "When any large and identifiable segment of the community is excluded from jury service, the effect is to remove from the jury room qualities of human nature and varieties of human experience, the range of which is unknown and perhaps unknowable. It is not necessary to assume that the excluded group will consistently vote as a class in order to conclude, as we do, that its exclusion deprives the jury of a perspective on human events that may have unsuspected importance in any case that may be presented." *Peters* v. *Kiff*, 407 U.S. 493, 503-04, 92 S. Ct. 2163, 2169, 33 L. Ed. 2d 83, 94 (1972).

We can think of no rational reason to sustain the total and arbitrary exclusion of this group from jury service. If the reason were to secure the uninterrupted performance of pedagogical tasks, teachers in primary and secondary schools should be entitled to the same exclusion as college-level educators. Moreover, the appropriate way to avoid interfering with the scholarly pursuits of professor and student alike is by exempting, not excluding, them from service in appropriate cases. The total and arbitrary exclusion of the university and college academic community from the grand-jury selection process is an impermissible violation of the due-process right of the criminal defendant to be indicted by an impartial grand jury drawn from a fair cross section of the community.

We therefore find that the exemption of §9-9-3 was unconstitutionally applied when this grand jury was selected, and that the indictments, having thus been returned by a grand jury composed in violation of constitutional requirements, cannot stand.[7] It is therefore unnecessary to address the remaining certified questions.

---

[7] See, however, dissenting opinion of Mr. Justice Jackson in *Cassell* v. *Texas*, 339 U.S. 282, 298-305, 70 S. Ct. 629, 637-40, 94 L. Ed. 839, 853-56 (1950) and of Mr. Justice Stewart in *Rose* v. *Mitchell*, 47 U.S.L.W. 4948, 4956-57 (1979), both arguing that an accused should not be entitled to have his conviction set aside on the ground that the jury that indicted him was improperly constituted, if the petit jury that tried him did not violate constitutional standards.

The papers in the cases with our decision certified thereon are ordered returned to the Superior Court for further proceedings.

Mr. Justice Weisberger did not participate.

*Dennis J. Roberts II*, Attorney General, *Thomas H. Caruolo*, Special Assistant Attorney General, for plaintiff.

*Abedon, Stanzler, Biener, Skolnik & Lipsey*, Providence, *Milton Stanzler, Edward N. Beiser, Linda Kushner* (for Joel Jenison) *Keven A. McKenna, Ronald A. Dwight*, Providence (for Michele G. Cory), for defendants.