252 A.2d 435.

SPENCER HANDY *vs.* CYRIL GEARY.

SPENCER HANDY *vs.* DENNIS GEARY.

PETER UCCI, *p.a. vs.* DENNIS GEARY.

SILVIO UCCI *vs.* DENNIS GEARY.

APRIL 23, 1969.

PRESENT: Roberts, C. J., Paolino, Powers, Jos'in and Kelleher, JJ.

PAOLINO, J. These four actions of trespass on the case

for negligence[1] involve the alleged negligent operation of an automobile owned by the defendant Cyril Geary and operated by his son Dennis. The plaintiffs Spencer Handy and Peter Ucci were passengers in the Geary automobile. Spencer Handy brought an action for personal injuries against both defendants. Peter Ucci and his father Silvio Ucci sued Dennis Geary alone. Peter, who sued by his father and next friend, sought damages for personal injuries. His father sued for consequential damages sustained by him as the result of the accident.

The four cases were consolidated for trial and were tried before a justice of the superior court sitting with a jury and resulted in verdicts of $669.10 for Spencer Handy against both defendants, and $850 for Peter Ucci and $4,797.37 for Silvio Ucci against defendant Dennis Geary.

The trial justice denied defendants' motions for new trials in all four cases. He also denied Spencer Handy's motion for an additur and for a new trial on damages only, but he granted Peter Ucci's motion for an additur by ordering defendant Dennis Geary to agree to an additur of $10,000 within five days or a new trial would be ordered on the question of damages only. The defendant did not agree to the additur.

In each case a judgment[2] on the verdict was entered. The cases are before us on defendants' appeals from the judgments. The defendants base their appeals on their objections to certain evidentiary rulings by the trial justice, to his refusal to charge as requested, to objections to his charge, to his decisions denying their motions for new trials, and, in the case of Peter Ucci, to his decision granting an

---

[1]These actions were commenced prior to January 10, 1966, the effective date of the new rules of civil procedure of the superior court. However, since they were pending on the effective date, the new rules governed pursuant to the provisions of rule 86.

[2]On June 17, 1968 the record was amended in this court in each case by including an entry of judgment.

additur of $10,000 or a new trial on the question of damages only.

The issues raised by these appeals require a rather detailed discussion of the evidence. These actions result from an accident which occurred when an automobile, driven by Dennis Geary, and in which plaintiffs Spencer Handy and Peter Ucci were passengers, left the road and struck a boulder on the side of the road. The collision happened on Arnold Road, a macadam-surfaced highway approximately 28 feet in width at the point of impact. About midnight on August 17, 1962, defendant Dennis parked his father's automobile in a dimly-lit parking lot behind a hot dog stand located on Arnold Road at a place known as Twin Lakes in Coventry. The stand was closed at that hour, but Dennis stayed there for more than one half hour with five or six other young people. The accident happened about three or four minutes after Dennis left the stand in his car.

Peter Ucci testified that he and some friends had been at a dance; that after the dance they went to the home of one of his friends, one Ralph Mascola; that the Mascola house was in the vicinity of the hot dog stand; that at about 11:30 or 12 p.m. on the night in question, he and his friends went out on a boat owned by Ralph Mascola's father; and that after a while he and one of his friends jumped off the boat and swam to a beach near the hot dog stand. He further testified that later his friends in the Mascola boat came to the hot dog stand in three automobiles and delivered his clothes and those of his friend; that he changed into dry clothes but did not leave the area in any of his friends' automobiles, but instead left in Dennis Geary's automobile; that he was only getting a ride back to the Mascola house; that he never knew Dennis or Spencer Handy before this night. Peter also testified that Dennis started to drive a little fast after they had gone through the builtup section; that he told Dennis to slow down; and

that the speed of the car before it left the road was 70-75 miles an hour. Peter was sitting in the front seat. The car left the road and hit a boulder at the edge of the road. Peter testified that he braced himself and saw everything, even when the car hit the tree and flung Dennis out of the driver's door.

Peter sustained a fracture of the left femur, a fracture of the first through the fourth metatarsal bones of the left foot and a fracture of the eighth and ninth ribs on the right side, with multiple contusions and abrasions. He was in the hospital from August 17 to September 6, 1962, and again for two days on September 23 to September 24, 1963, to have a pin removed. His medical bills totaled $900 plus hospital bills of $883, and his loss of wages was forty weeks at $77 and one week at $92.

Dennis Geary's testimony is substantially as follows. He did not know Peter at all prior to the night of the accident. He said he asked the "fellows" on the parking lot behind the stand to go for a ride with him, that they jumped in his car, and he then drove away with no specific destination in mind. He could not recall whether he had any talk with Peter about where he was going or where he, Dennis, was going to take him. He denied that anyone told him anything about the way he was driving or that Peter told him to slow down. He said he did not remember seeing Peter and his friend in the area until Peter got in the car. In describing how the accident occurred he said he was coming around a curve on Arnold Road, that the headlights of an approaching car blinded him, that he applied his brakes and pulled to the right, that he lost control of his car and hit the rock, and then hit a tree, pushing in the front end and knocking out the windshield, and that after that he did not remember anything until he woke up in the hospital.

Dennis described his injuries and said that he sustained

a severe concussion from striking his forehead and that this affected his memory. He said that he remembered little about the accident after hitting the boulder, when he was knocked out. He had no recollection of his speed when he started out from the parking lot, during the short ride, or at the time of the accident. The evidence as to the speed of the Geary car came entirely from plaintiffs and their witnesses.

Spencer Handy testified that Dennis was driving at an estimated speed of at least 60 to 70 miles an hour when the car left the road; that he had been going at that speed for sometime after he left the parking lot; that he did not object to the way Dennis was driving; and that he did not hear anybody else in the car object to Dennis driving that fast. A statement signed by Spencer ten days after the accident is in evidence as one of defendants' exhibits. It contains statements by him that he had fallen asleep when he got into the back seat of the car; that before he fell asleep, Dennis was going about 30 miles an hour and that he was driving in a careful manner. The record also contains evidence describing Spencer's injuries.

The plaintiffs presented the testimony of one Richard T. Lesniak, a resident of Arnold Road, who saw the accident. He gave the following testimony. As he was driving his car in a northerly direction on Arnold Road at a speed of 30 to 40 miles per hour he saw "headlights coming awfully fast up the road, and the car just failed to make the curve. * * * It hit a rock * * * it went to the right and stayed there." He had pulled over to the side of the road because he thought Dennis' car was going to hit him, and estimated he was about 25 to 35 yards away from the car when it left the road. He said Dennis' car to the best of his knowledge, was propped up on a boulder and that once it hit the boulder it never moved. He did not remember the car hitting a tree. He further testified that because of the

way the curve runs on the road at that point, his car's headlights were shining towards the bank and away from Dennis. Although he saw the headlights of Dennis' car coming in the dark toward him only for a matter of a second or two, he estimated the speed of that car at 70 miles per hour when it left the road.

The police testimony is that Dennis' car first struck a boulder and then struck a tree some 60 feet away. The record also contains medical testimony and various exhibits which, though important, require no discussion at this time.

The defendants have briefed and argued their objections under four main points. We shall treat them in like manner, though not in the same order.

## I

We address ourselves initially to their contention that the trial justice committed prejudicial error in refusing to admit certain material evidence.

## A

Their first argument challenges the trial justice's ruling sustaining plaintiffs' objection to the introduction in evidence of a certain sketch, which had been marked defendants' "B" for identification. The sketch, which was made by the Coventry police, contains a diagram of the scene of the accident and certain other measurements, but it was not the original sketch made at the scene. It was not drawn to scale and was not as accurate as the original. Substantially all of the measurements and other markings on the sketch are covered in the oral testimony. In these circumstances we cannot say that the exclusion of the sketch was prejudicial error.

## B

The defendants' next contention, as they state it, relates to the "Exclusion of questions to intend to prove plaintiffs were going on a joy ride." The defendants' counsel refers

to the following portion of his cross-examination of Peter Ucci at page 151 of the transcript.

"489 Q You went to work Friday morning, didn't you?
A No.
"490 Q Didn't you work that day?
A How could I, I was in the hospital.
"491 Q Normal course, if no accident happened, wouldn't you have gone to work the next day?
A Yes.
"492 Q How were you going to get to work over in Seekonk?
The Court: Mr. Zucker.
Mr. Zucker: Credibility.
The Court: Stay away from this subject, go to the issue.
Mr. Zucker: This is credibility.
The Court: The Court restricts you.
Mr. Zucker: Note my objection. Note my objection.
The Court: What he is going to do after, it's all speculative."

The defendants argue that by such questioning they intended to impeach Peter Ucci's testimony that he got into the Geary car for the purpose of being driven to the Mascola home. We infer from their argument that they intended to show that Peter Ucci accepted the ride in the Geary car for the purpose of going on a "joy ride." We see no connection between what Peter would have done on the next day if no accident had happened and the accident involved in this case. We agree with the trial justice that this line of questioning had no relevance and was purely speculative.

### C

The defendants' next contention is that the trial justice's exclusion of evidence to show beer drinking by Dennis Geary at the parking lot on the night in question in the

presence of Peter Ucci and Spencer Handy was prejudicial error. During the cross-examination of Peter Ucci and the direct examination of Dennis Geary, defendants' counsel inquired whether there had been any beer drinking by Dennis Geary and as to what was going on in the parking grounds prior to Dennis driving off. Upon defendants' counsel's representation that he had no evidence that Dennis was intoxicated and that he "wouldn't" say that they were going to prove intoxication, the trial justice sustained plaintiffs' objection to this line of questioning.

The defendants' counsel then made the following offer of proof.

> "* * * I want to make an offer of proof that if the Defendant, Dennis Geary, had been allowed to answer the question with respect to what was going on in this parking grounds, he would have testified that for a period of about a half an hour or better, he and other men were drinking beer in cans, and cans were being thrown around and Mr. Ucci was there at the time, and that after seeing him drinking this beer, Mr. Ucci went in the car with him just the same."

In excluding such testimony the trial justice was relying on the conclusion of this court in *Peters* v. *Gagne,* 98 R. I. 100, 199 A.2d 909. At page 243 of the transcript he said:

> "* * * The Supreme Court is quite clear in the decision that you can't bring in any evidence of drinking unless you are assuring The Court that you intend to prove intoxication, and since you are not able to assure The Court you intend to prove intoxication, this evidence is not admissable [sic]."

The issue in *Gagne, supra,* was whether evidence of the consumption of an alcoholic beverage, as distinguished from intoxication, was admissible on the issue of plaintiff's contributory negligence. The case was heard before a four-man court, consisting of the then Chief Justice, the present Chief Justice, Mr. Justice Powers and Mr. Justice Joslin. The justices were unanimous in their conclusion that the

admission of testimony in that case concerning plaintiff's consumption of an alcoholic beverage on the day of her injury constituted reversible error and accordingly remitted the case to the superior court for a new trial.  Mr. Justice Powers, with whom the then Chief Justice joined, based his decision on his conclusions that the extent of plaintiff's drinking could not be found by the jury to have consisted of more than one cocktail several hours prior to the time of the injury.  In their judgment, he said, this was an act so remote as to be without probative force and, in the nature of things, clearly prejudicial.  However, Mr. Justice Powers acknowledged the existence of a split of authority on the question of whether evidence of the consumption of an alcoholic beverage as distinguished from intoxication is admissible on the question of negligence.  He said in *Gagne, supra,* at 106, 199 A.2d at 912:

> " * * * The question of social drinking is, as a matter of common knowledge, so controversial as to have established what appears to be the majority rule that nothing less than intoxication is an element of proof on the issue of negligence.  * * * "

The present Chief Justice wrote a concurring opinion in which Mr. Justice Joslin joined.  He also acknowledged the existence of a split of authority on this question.  After noting that no claim was made that the plaintiff was intoxicated and that the evidence of drinking was being offered only for the purpose of establishing the consumption of some alcoholic beverage for whatever probative force it might have on the issue of plaintiff's due care for her own safety, he said:

> "Whatever might be the rule in cases where intoxication is put in issue by the pleadings, however, the question with which we are confronted here is whether testimony as to the consumption of an alcoholic beverage should ever be allowed into evidence where intoxication is not in issue.  * * * I cannot accept the view that testimony is admissible merely to establish the

consumption of alcohol as distinguished from proof of intoxication. It is my opinion that the better rule is stated in *Fisher* v. *Dye,* 386 Pa. 141. In that case the court said at page 148 that 'while proof of intoxication is relevant where reckless or careless driving of an automobile is the matter at issue, the mere fact of drinking intoxicating liquor is not admissible, being unfairly prejudicial * * * .' "

* * *

"I find inescapable the conclusion that the admission of such testimony when intoxication is not in issue clearly imports the question of intoxication into the deliberations of the jury. Not the least of the evils thereof is that it opens the door to the injection of the half-truth and the distorted fact into the judicial process with the usually inevitable consequence of a prejudiced determination as to liability. * * * "

The reasons of the rule referred to in each of the concurring opinions is stated as follows by Mr. Wigmore in VI Wigmore, *Evidence,* §1904: It may be excluded because

" * * * the probative usefulness of the evidence is more than counterbalanced by its disadvantageous effects in confusing the issues before the jury, or in creating an undue prejudice in excess of its legitimate probative weight. In either case, its net effect is to divert the jury from a clear study of the exact purport and effect of the evidence, and thus to obscure and suppress the truth rather than to reveal it."

In the present case, it is claimed that plaintiff should not be allowed recovery because either he was contributorily negligent or he had assumed the risk when he went for a ride in an automobile driven by a person whom he knew or should have known had been drinking intoxicants. In view of defendants' representations that they had no evidence that defendant Dennis Geary was intoxicated and that they would not say they were going to prove intoxication, the question of intoxication was not in issue in the case at bar. We therefore hold that the ruling excluding evidence of drinking of intoxicants was not error.

We recognize, however, that neither opinion in the *Gagne* case formulated a definition of "intoxication." We believe that a definition of that term will be helpful in the trial of civil cases. Intoxication comprehends a situation where, by reason of drinking intoxicants an individual does not have the normal use of his physical or mental faculties, thus rendering him incapable of acting in a manner in which an ordinarily prudent and cautious man, in full possession of his faculties, using reasonable care, would act under like conditions. *State* v. *Hightower,* 238 La. 876, 116 So.2d 699.

Because of the potential prejudice to a litigant by the admission of this kind of evidence, and in order to give guidance to trial justices in the trial of civil actions where this question arises, we are today announcing a new procedure which we believe will better serve the ends of justice. Whenever the issue of intoxication is raised, before evidence of drinking of intoxicants may be presented to the jury, the trial justice shall conduct a preliminary evidentiary hearing on this issue in the absence of the jury. If he finds that the evidence is such that different minds can naturally and fairly come to different conclusions on the question of intoxication, as we have defined that term, then and only then, may evidence of drinking be admitted under proper instructions for ultimate determination of such question by the jury under the same test.

## II

The defendants next argue their objections to a certain portion of the charge as given and to the refusal of the trial justice to grant their requests to charge Nos. 12 and 13. We consider first their objection to the following instructions:

> " * * * The duty to a guest or a passenger is that of ordinary care. The passenger in an automobile driven by another is not guilty of contributory negligence because he has done nothing. The mere presence in

432

an automobile in and of itself is not the assumption of a known risk.

\* \* \*

" \* \* \* the taking of a joy ride, in and of itself is not an assumption of a known risk."

A charge to a jury is to be considered in its entirety. *Camaras* v. *Moran*, 100 R. I. 717, 722, 219 A.2d 487, 490. When read in the context of the charge as a whole, we find no error in the first portion of the instructions to which defendants object.

The reference by the trial justice to a "joy ride" poses a different question. As far as we have been able to ascertain from those portions of the transcript referred to by the parties, there is no evidence that the ride in question was a "joy ride." At least, the parties have pointed to no portion of the record where any of the witnesses have stated in express language that it was a "joy ride." The general rule is that a charge must be applicable to facts that have been adduced in evidence. *Cinq-Mars* v. *Standard Cab Co.*, 103 R. I. 103, 235 A.2d 81, 84. However, even if we assume that the trial justice's reference to "joy ride" was error, we believe that the error was cured by the other instructions given by the trial justice. See *D'Angelo* v. *Director of Public Works*, 89 R. I. 267, 272, 152 A.2d 211, 214. On the facts in this case, in light of the charge as a whole, we are convinced that defendants were not prejudiced by the reference to "joy ride" and, therefore, their instant contention lacks merit.

We consider next defendants' contention that the refusal of the trial justice to grant the following requests to charge was prejudicial error:

"12. If the Jury finds that either plaintiff, Spencer Handy or Peter Ucci, entered the Geary automobile under conditions obviously dangerous, they voluntarily assumed the risk and may not recover from the defendants. *Schiano vs. McCarthy Freight*, 75 R. I. 253 at 258.

"13. If the Jury finds that either plaintiff, Spencer Handy or Peter Ucci, after entering the Geary automobile, remained in the same under conditions that were obviously dangerous, if they did nothing or said nothing to terminate the dangerous conditions or attempt to terminate these conditions, they voluntarily assumed the risk, and the verdict of the Jury should be for the defendants in each case. (See *Schiano vs. McCarthy, ubi supra*)"

With respect to request No. 12, there is no evidence in this record that Spencer Handy or Peter Ucci entered the Geary automobile under conditions obviously dangerous and consequently the trial justice correctly refused this request. *Cinq-Mars, supra.*

The substance of request No. 13 was fairly covered by the general charge and therefore the trial justice's refusal to grant the request was not reversible error. *Budwee* v. *New England Motors, Inc.,* 99 R. I. 663, 210 A.2d 131.

The defendants further argue that the trial justice committed prejudicial error in refusing to grant their request No. 3, that negligence may not be presumed from the mere fact of an accident, and request No. 5 as to the duty of a driver when suddenly confronted with an emergency not of his creation, and request No. 6 relating to the law applicable to unavoidable accident. The substance of these requests is covered in the general charge and therefore the instant contention is without merit. *Budwee, supra.*

### III

We come now to a consideration of defendants' motions for new trials. We take up first the question of liability. The trial justice reviewed the evidence which he considered pertinent to a resolution of the issues raised by defendants' motions. He accepted the evidence of plaintiffs that defendant was speeding. With respect to the question of defendants' defense that this was an unavoidable accident caused by the fact that Dennis was blinded by the lights

of the oncoming car, he accepted the testimony of Mr. Richard Lesniak, the driver of that car, that it would be impossible for his lights to hit the eyes of the driver of the Geary car because just prior to the accident, his, Lesniak's, lights would be hitting the bank of the curve. The trial justice referred to Mr. Lesniak as an impartial witness. He referred to Dennis' claim of loss of memory as to how fast he was going, but pointed to the fact that Dennis remembered that he was blinded by the oncoming lights. He stated that he was satisfied there was ample evidence to support plaintiff's version, that the testimony of the impartial witness corroborated the story of plaintiff, that Dennis' testimony was full of inconsistencies and that he did not accept Dennis' testimony. He also stated that the skid marks were caused by the Geary automobile and he referred to the statements of defendants' counsel to the jury that the Geary car was going fast. He concluded that in the circumstances he was satisfied that Dennis' negligence was the sole proximate cause of the accident and therefore denied the motions for new trials.

With respect to the trial justice's decision on the issue of liability, defendants argue in substance that he overlooked certain material evidence, including the mental condition of Dennis and the effect of the serious concussion, in arriving at his determination that he did not believe Dennis. They also assert that the trial justice did not refer to the testimony of the plaintiffs as to speed or to the facts that Dennis had been knocked unconscious when his car struck the boulder. They also point to the trial justice's reference in his decision to statements of counsel for defendants that the Geary car was going fast and they argue that his reliance on statements of counsel was error.

There is no error in the trial justice's reference to statements made to the jury by defendants' counsel. Nor was it necessary for the trial justice to refer to specific testi-

mony of plaintiffs' witnesses with respect to the question of speed or to the evidence that Dennis had been knocked unconscious. All that is required of a trial justice in passing on a motion for a new trial is that he exercise his independent judgment in passing on the weight of the material evidence and the credibility of the witnesses, that he give his reasons for his conclusions, and that he refer to the evidence on which he relied. Our duty on review is to determine whether he performed his duty in exercising his independent judgment and whether, in so doing, he overlooked or misconceived any material evidence. *Notarantonio* v. *Damiano Bros. Welding Co.,* 101 R. I. 173, 221 A.2d 473; *Hulton* v. *Phaneuf,* 85 R. I. 406, 132 A.2d 85; *Dawson* v. *Rhode Island Auditorium, Inc.,* 104 R. I. 116, 242 A.2d 407; *DiMaio* v. *Del Sesto,* 102 R. I. 116, 228 A.2d 861.

After reviewing his decision, we are satisfied that he exercised his independent judgment in passing on the weight of the evidence and the credibility of the witnesses and that he neither overlooked nor misconceived any material evidence. We will, therefore, not disturb his approval of the jury's verdicts on the question of liability.

Finally we come to the defendants' contention that the trial justice erred in granting plaintiff Peter Ucci's motion for an additur by ordering defendant Dennis Geary to agree to an additur of $10,000 within five days on condition that if he refused to do so, a new trial would be ordered on the question of damages alone. The defendant, who did not agree to the additur, argues strenuously that the trial justice was merely substituting his judgment for that of the jury on the question of pain and suffering sustained by Peter Ucci. He argues that the jury verdict of $850 should be allowed to stand.

The trial justice gave the following reasons for granting the additur:

"Now in regards to Peter Ucci, you have a different situation. The jury allowed his father the sum of $4,797, and $378 for out of pocket expenditures, which included lost wages and medical expenditures. This Plaintiff suffered a broken thighbone, fractured four bones of his foot, a fracture of the ribs, two permanent scars on his arm, he was out of work at least 37 weeks, he had a pin in his leg for 13 months. His doctor said he made a good recovery, that he went back to work sooner than he would recommend. He lost 50 pounds, he was on crutches, cane; counsel for the Defendant's conduct was unforgivable during the course of the trial. He talked about liquor two or three times, he talked about joy rides. He went into incidents prior to the Plaintiff entering the Defendant's vehicle, in reference to parties, where did he take his swimming trunks off, whether he wore swimming trunks when he left the boat, it had nothing to do with the incident, when the Plaintiff entered the Defendant's vehicle. Counsel's conduct was such, that I believe it prejudiced the mind of the jury against the Plaintiff, Ucci. He was grasping at straws in an attempt to cut down the amount of this verdict, and under the circumstances, this Court will order the Defendant to grant an additur of $10,000 within five days, otherwise, the Plaintiff is entitled to a new trial on damages only."

The question of the amount of damages to which an injured person is entitled, where liability is established, always poses a difficult problem because of the very nature of the damages sought. We had occasion to consider this problem at the last term of court in the case of *Fusaro* v. *Naccarato,* 103 R. I. 324, 237 A.2d 545. In that case, we referred to *Tilley* v. *Mather,* 84 R. I. 499, 124 A.2d 872 and *Calci* v. *Brown,* 95 R. I. 216, 186 A.2d 234. In *Fusaro,* we said:

" * * * there is no formula to which we adhere for the computation of the damages to be awarded for pain and suffering."

We also said that in *Tilley* the court noted that the amount to be awarded as damages for pain and suffering is a matter

to be left to the discretion of the jury under proper instructions, that it has always been the policy of this court to allow a jury substantial latitude in the computation of an amount to be awarded for such damages, and that this court would reduce the jury's verdict only when it appeared that the award was grossly excessive. We also said that an award is grossly excessive when there is a demonstrable disparity between the amount and the pain and suffering shown to have been endured as a consequence of the injury sustained. We also noted that we reiterated these views in *Calci, supra.*

While those cases involved the question of excessive damages, we see no reason why a similar rule should not apply where the question of inadequate damages for pain and suffering is involved. The trial justice in the case at bar obviously concluded that the amount of the verdict was inadequate because it did not fairly and reasonably respond to the merits of the evidence presented by plaintiff relative to the pain and suffering he endured and that therefore there was a demonstrable disparity between the amount awarded and the pain and suffering shown to have been endured as a result of the injuries sustained.

In *Armes* v. *United Electric Rys.*, 74 R. I. 450, at 451, 62 A.2d 131, at 131, we said:

> " * * * it is the duty of the trial justice, on a motion for a new trial, to revise the jury's award of damages whenever in the exercise of his independent judgment of the evidence it appears that the award is grossly excessive or inadequate. * * * that when he thus exercises his judgment and revises the verdict we will not disturb his decision merely because we might have made a somewhat larger or smaller reduction if we were in his place. (cites omitted) In other words, in reviewing the trial justice's revision of the damages, as in reviewing his decision as to whether they are grossly excessive, this court applies the rule that it will not disturb his decision unless it is clearly wrong."

438

We have examined the trial justice's decision on the question of damages in light of the evidence relating to plaintiff Peter Ucci's injuries. We are satisfied that he exercised his independent judgment in passing on the evidence pertaining to Peter's injuries and resulting pain and suffering and that in so doing he neither overlooked nor misconceived any material evidence. He gave his reasons for ordering the additur and, although the amount of the additur is substantial, we cannot say, on this record, that he was clearly wrong either in his finding that the amount of the verdict was grossly inadequate or in the extent to which he has revised it.

The defendants' appeals are denied and dismissed, and the causes are remanded to the superior court for further proceedings.

Motion to reargue denied.

*Charles H. Anderson,* for plaintiffs.

*Martin M. Zucker,* for defendants.