**308 A.2d 792.**

STATE *vs.* SIDNEY A. CLARK.

AUGUST 17, 1973.

PRESENT: Roberts, C. J., Paolino. Kelleher and Doris, JJ.

KELLEHER, J. The defendant, after a jury trial in the Superior Court, stands convicted of an indictment charging him with rape. He is before us prosecuting a bill of exceptions in which he challenges (1) the denial of his request to inspect the grand jury's minutes; (2) the overruling of his objection to a question asked of a witness for the prosecution; and (3) the composition of the petit jury.

At the time of trial the prosecutrix, whom we shall call Kathy, was a student at a nearby college. She lived in an off-campus second floor apartment. In the late afternoon of July 9, 1969, she had cleaned up the kitchen area. She decided to carry the results of her cleanup efforts out to the back yard where it could be placed in a refuse container. There were two sacks of discarded material to be transported.

When Kathy left her apartment, she saw a stranger on the stairway. She went down the rear stairway, deposited the first sack in the refuse receptacle, and returned to her apartment for the second sack. As she exited the kitchen, she was grabbed from behind. The stranger who had been on the stairway was now holding a knife at Kathy's throat. The rape followed. The stranger left after he had bound and gagged his victim.

Kathy's roommate, who worked for an insurance company which is located in downtown Providence, returned some 15 minutes later and learned of what had transpired in her absence. The incident was not reported to the police. Two days later, Kathy left on a summer vacation and went to her parents' home in another state.

Kathy returned to school the following September. As she was walking along North Main Street in Providence, she observed the "stranger" walking on the opposite sidewalk. Kathy thereupon went to the college's security officer who in turn referred her to the Providence Police. She viewed a series of photographs and without any hesitation picked out Clark's picture. A lineup was held and once again she identified Clark as the stranger who raped her.

Clark's defense was that on the afternoon of July 9, he was at the horse races in New Hampshire with his mother.

In the area of the disclosure of the grand jury's minutes, we have ruled that a defendant may examine them once he has demonstrated to the trial justice a particularized need for their production. *State* v. *Ouimette,* 110 R. I. 747, 298 A.2d 124 (1972). Such a need, we said, might be shown if the defendant shows some extraneous circumstances which would prove reasonable grounds for a belief that a witness's testimony might be vulnerable on cross-examination because of potential inconsistencies which might be uncovered by an examination of the minutes. However, in *State* v. *Carillo,* 112 R. I. 6, 307 A.2d 773

(1973), we stressed that the need for such an inspection must be established in trial court and not at the appellate level.

In an attempt to establish the requisite inconsistency, defendant points to Kathy's testimony where in pinpointing the day she saw Clark walking along North Main Street she said it was on the second Friday in September, which she thought was either September 18 or 19, 1969, The defense offered Kathy's approximation of the day she observed Clark on North Main Street as grounds for inspecting the grand jury's records. The discrepancy is of little consequence. When pressed, Kathy said she was certain that the second occasion she saw Clark was the second Friday in September, but that her identifying that day as the 18th or 19th was merely an approximation. The trial justice also found no inconsistencies between the version Kathy gave in court and the one given earlier at the bind-over hearing in the District Court. The particularized need was not demonstrated[1] and we affirm the refusal to inspect the grand jury minutes.

Kathy's roommate testified that when she arrived home from work, she rang the doorbell; that Kathy asked her if she were alone; that she assured Kathy that she was alone and that, as she walked into the apartment Kathy said, "We can't live here any more, something's happened. I've been raped." Clark contends that Kathy's rape report to her roommate was inadmissible because due to the lapse of time between the rape and the roommate's arrival it could not be classified as a spontaneous utterance. He also claims that the statement was not part of the res gestae.

Recently, in State v. Vaccaro, 111 R. I. 59, 298 A.2d 788 (1973), we asked that an effort be made to avoid the phrase "res gestae" and that the proper category be given

---

[1]The defendant's appellate counsel did not represent him at trial.

to a disputed statement which qualifies as an exception to the rule barring the use of hearsay evidence. We have also pointed out on several occasions that hearsay which is to be excluded refers only to out-of-court utterances which are offered for the purpose of establishing the truth of the matters asserted therein. *State* v. *Vaccaro, supra; Martin* v. *Estrella,* 107 R. I. 247, 266 A.2d 41 (1970); *Allen* v. *D'Ercole Constr. Co.,* 104 R. I. 362, 244 A.2d 864 (1968). Here, Kathy's statement does not come within the prohibition against hearsay because it was not offered to show that Clark was the rapist. Rather, it was offered to show the mental state of Kathy when her roommate sought entry into the apartment. Even if the testimony had named Clark as the assailant, it would have unquestionably been admissible under the spontaneous utterance exception to the hearsay rule. The rape occurred sometime after 4:00 p.m. The roommate arrived at 4:30. There is no need for a showing of strict contemporaneity. It is enough, if, upon consideration of all facets of a case, the declarant when he spoke was still laboring under the stress and excitement engendered by the event he describes. *State* v. *Mancini,* 108 R. I. 261, 274 A.2d 742 (1971); *State* v. *Nordstrom,* 104 R. I. 471, 244 A.2d 837 (1968). This was certainly the case when Kathy's roommate returned to the apartment.

The defendant is a member of the black race. We turn now to his contention that his conviction should be set aside because he was tried by an all-white jury. He concedes that the jury-selection process that is set forth in G. L. 1956 (1969 Reenactment) ch. 9 of title 9 is, in theory at least, as unsusceptible to being used for discriminatory purposes "as one could hope such a process to be." In fact §9-9-2 specifically states that no citizen who is otherwise qualified shall be disqualified from serving as a grand or petit juror because of his race, color, or previous condition

of servitude, and that any person who wilfully excludes or fails to summon a juror because of the pigmentation of his skin is subject to a fine not exceeding $1,000.

The defendant urges that as a matter of "procedural safeguard" any time a member of a "minority group" is being tried, the jury should contain at least one member of such a group. While this may be an ideal goal, its attainment is not a matter of constitutional magnitude. An accused has no right to demand that members of his race be on the jury which. tries him. He does, however, have a right to require that a state not engage in practices which result in the systematic and deliberate exclusion of his race from the jury lists. Accordingly, the defendant who complains about the absence from a jury of representatives of an identifiable segment of the community must prove that the absence is due to a preconceived exclusionary plan by those responsible for the formulation of the jury lists. *Alexander* v. *Louisiana,* 405 U. S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972); *Swain* v. *Alabama,* 380 U. S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965); *Cassell* v. *Texas,* 339 U. S. 282, 70 S.Ct. 629, 94 L.Ed. 839 (1950); *Akins* v. *Texas,* 325 U. S. 398, 65 S.Ct. 1276, 89 L.Ed. 1692 (1945).

An argument similar to the one made by Clark was rejected by this court over a half-century ago. *State* v. *Smith,* 93 A. 353 (R. I. 1915). We find no proof for the notion that a juror will disregard a court's admonition to return a true and just verdict and cast his vote for guilt or innocence based on prejudice rather than the evidence. *Apodaca* v. *Oregon,* 406 U. S. 404, 92 S.Ct. 1628, 32 L.Ed. 2d 184 (1972).

The defendant's exceptions are overruled and the case is remitted to the Superior Court.

Mr. Justice Joslin did not participate.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,*

Asst. Attorney General, *R. Raymond Greco*, Special Asst. Attorney General, for plaintiff.

*William F. Reilly*, Public Defender, *Alton W. Wiley*, Asst. Public Defender, for defendant.