**STATE**

**v.**

**Frederick E. DeWITT.**

**No. 78–412–C.A.**

Supreme Court of Rhode Island.

Dec. 18, 1980.

Dennis J. Roberts, II, Atty. Gen., Michael J. McEntee, Sp. Asst. Atty. Gen., for plaintiff.

Stone, Clifton & Clifton, Edward C. Clifton, Providence, for defendant.

OPINION

MURRAY, Justice.

This is an appeal by the defendant, Frederick E. DeWitt, from his convictions on three counts of an indictment returned by a Providence County grand jury.[1] The defendant was tried by a justice and jury of the Superior Court on charges of robbery,[2] arson,[3] and assault with intent to commit murder.[4]

The defendant's prosecution arose out of an alleged robbery and fire that took place on July 7, 1977, at the home of the victim, Emma J. Seymour. Mrs. Seymour testified at both defendant's bail hearing and his trial that at around 4 p. m. on the day in question, defendant gained entry to her apartment at 81 Parade Street in Providence by breaking down the rear door. She went on to testify at length about the sordid events that ensued in her apartment over the next hour and a half. The jury found this testimony and the other evidence sufficient to return verdicts of guilty on the

1. The grand jury originally returned a six-count indictment against defendant; however, three of those counts (one count of assault with intent to commit murder and two counts of assault with a dangerous substance) were voluntarily dismissed by the prosecution prior to the commencement of the trial.

2. In violation of G.L.1956 (1969 Reenactment) § 11–39–1.

3. In violation of G.L.1956 (1969 Reenactment) § 11–4–1, as amended by P.L.1977, ch. 54, § 1.

4. In violation of G.L.1956 (1969 Reenactment) § 11–5–1.

three counts of robbery, arson, and assault with intent to commit murder.

Prior to the commencement of his trial defendant made several motions. Among them were motions to suppress and a motion to pass the case. The defendant sought suppression of the victim's identification of him at a lineup conducted by the Providence police after his arrest, of her subsequent in–court identification of him, and of the statement he gave to the Providence police while he was in their custody. The defendant moved to pass the case because of the alleged discriminatory procedure used in the selection of the petit jury panel. The trial justice's denial of all of these motions forms the basis of defendant's present appeal.

In order to appreciate fully the contentions raised in defendant's appeal, we must delve into the record with regard to the circumstances surrounding defendant's arrest and the events subsequent thereto. The defendant testified during the trial that sometime after the incident in question, the woman with whom he had been living at the time, Laurie Paiva, informed him that the police suspected him in connection with the July 7, 1977 fire at Mrs. Seymour's apartment. This information, defendant testified, caused him to panic and flee to Taunton, Massachusetts, to the home of his grandmother.

Detective Phillip J. Collins of the Providence police department testified that the information he and others had gathered during the investigation led them to the name of Fred DeWitt. On the 13th of July 1977, six days after the robbery and fire, Detectives Giblin, Collins, Cassidy, and Sergeant Bruckshaw of the Providence police department drove to Taunton to apprehend defendant. Their first stop was the Taunton police headquarters. From there they proceeded, along with three members of the Taunton police department, to a house at 7 Hood Street in Taunton. Detective Giblin testified that they knocked at the door of this house, but no one responded. He further testified that they learned the business address of the person who resided there,

and upon learning that address, he and one Taunton police officer went there. Upon their arrival at that address, the employer told them that the woman who lived at 7 Hood Street had that day off from work. The employer then gave them the number of the phone listed at 7 Hood Street.

Detective Giblin dialed this phone number. A "male voice" answered and Detective Giblin then asked if the speaker was Fred DeWitt. The person who answered gave a negative answer and hung up. Detective Giblin and the Taunton police officer then returned to the house at Hood Street. Upon their return to the house, the Taunton police officer had his office call that same number. Detective Cassidy testified that they could hear the phone ringing from outside and that they thought someone had answered the phone. Whoever placed the call then informed Giblin and the others over the police radio that a subject named DeWitt had identified himself and that he was going to come out and give himself up. He did not do so, however. The officers then broke a window in the rear door to gain entry into the house. After searching the premises for one–half hour or so, the officers found defendant hiding under a pile of clothing in a storage area on one of the upper floors of the house. Thereupon defendant was arrested, handcuffed, and transported to the Taunton police headquarters. He remained there a short time, after which the police officers took him to a courthouse in Taunton.

It is not readily apparent from the record what occurred at the courthouse in Taunton. Suffice it to say that defendant appeared before a judge, yet he returned to Rhode Island the same day. The Providence police officers took him to the Providence police headquarters.

The defendant first contends that his arrest was illegal, and that because of its illegality, it was error for the trial justice to deny his motions to suppress. The crux of the several arguments defendant advances in this record is that although the police placed their reliance on an East Providence

warrant[5] to effect defendant's arrest, their failure to have this warrant in their possession at the time of the arrest rendered the arrest illegal. The defendant argues that the prosecution was obligated to produce this warrant at the pretrial hearing and that the East Providence warrant was merely a pretext to justify an otherwise unlawful arrest. The illegality of the arrest, defendant concludes, mandates the exclusion of the evidence seized at the time of, and as a result of, the arrest, notably his confession, the lineup identification, and the in-court identification.

■ Our thorough review of the record indicates that we need not consider the merits of these arguments, for they were not properly raised below. Nowhere in the record can there be found a request by defendant that the warrant be produced. Nor is there to be found any argument that the evidence seized at the time of, and as a direct result of, the arrest should be suppressed because of the illegality of the arrest. Instead, defendant sought suppression of his statement on the grounds that it was coerced. He sought suppression of the lineup and in-court identifications on the grounds that the lineup was unduly suggestive and that the in-court identification was tainted by the improper lineup identification.

We are aware of the gravity of defendant's contentions; however, we have held on many previous occasions that we will not pass on constitutional questions unless they have been properly submitted on the record to the trial justice. *E. g., Town of Foster v. Lamphere*, 117 R.I. 541, 545, 368 A.2d 1238, 1240 (1977); *State v. DiMuccio*, 106 R.I. 219, 222, 258 A.2d 67, 69 (1969). Our examination of the record indicates that the constitutional arguments now raised before this court were not submitted to the trial justice below.[6]

This is not a case in which defendant will be deprived of constitutional protections because of our insistence upon compliance with procedural requirements. In this instance it is neither defendant's failure to object to certain rulings or decisions of the trial justice nor his failure to relate his objections to specific rulings or decisions which is fatal. *See State v. Wright*, 105 R.I. 556, 253 A.2d 593 (1969); *State v. Quattrocchi*, 103 R.I. 115, 235 A.2d 99 (1967).[7] Rather, it is defendant's utter failure to bring the arguments raised here before the trial justice, so that he would be in a position to render an informed decision on those issues, which is fatal. In these circumstances, it is apparent that the matter is not properly before us.[8]

Turning now to defendant's contention that the selection of the jury was discriminatory and that it was error for the trial justice to refuse additional inquiry into the jury-selection process, we note that these contentions are not novel. The prior cases in which we faced this issue and the present case have all involved black defendants tried before all-white juries.

5. For the record, we note that Detective Giblin testified that although the Providence police had no warrant for defendant's arrest, there was at the time a warrant outstanding for defendant's arrest on a charge of being a fugitive from a charge of breaking and entering in the city of East Providence. The testimony in the record further indicates that there was at least one East Providence police officer present at Taunton police headquarters that day; however, no one who went to the house at 7 Hood Street in Taunton had in his possession either an East Providence or a Providence warrant for defendant's arrest.

6. Despite defendant's failure in this regard, the trial justice dealt briefly with these issues in his decision to deny defendant's motion to suppress; nevertheless, the trial justice did not have the benefit of the arguments as they are advanced before this court and his ruling on this subject did not relate to any specific issue raised by defendant.

7. The court notes that defendant did not even reserve a general exception to the denial of his motion to suppress.

8. We might add that *State v. McGehearty*, R.I., 394 A.2d 1348 (1978) is of no avail to defendant. The defendant does not raise novel constitutional claims that could not be anticipated by his counsel at trial. Rather, he now seeks the application of well-settled constitutional principles, and in these circumstances *McGehearty* is inapplicable. *See State v. Duggan*, R.I., 414 A.2d 788, 791 (1980).

In *State v. Clark*, 112 R.I. 270, 308 A.2d 792 (1973), the defendant urged us to adopt a rule that "any time a member of a 'minority group' is being tried, the jury panel should contain at least one member of such a group." In declining to adopt such a rule, we held that the accused does not have a constitutional right to demand that members of his race be on the jury that tries him. *Id.* at 275, 308 A.2d at 795.[9] We went on to say that defendants who raise the issue of the absence from a jury of representatives of an identifiable segment of the community must prove that the absence is due to a preconceived exclusionary plan by those responsible for the formulation of the jury lists. *Id.* at 275, 308 A.2d at 795; *accord, State v. Johnson*, 116 R.I. 449, 457, 358 A.2d 370, 375 (1976).

In *State v. Johnson, supra*, the defendant raised arguments identical to those raised by defendant in the present case. Both cited figures from the 1970 census population statistics which indicated that although in 1970 2.68 percent of the total population of Rhode Island was black, 8.86 percent of the total population of Providence was black. The defendant has inserted nothing in the record that would cause us to depart from our statement in *Johnson* that "[a]lthough statistical evidence may be an important factor in establishing a prima facie case of racial discrimination in the jury selection process, the figures as presented are meaningless and come nowhere near meeting the *Clark* test." *State v. Johnson*, 116 R.I. at 457–58, 358 A.2d at 375.[10]

The mere recitation of these statistics, without more, is insufficient to make out a prima facie case of improper jury selection. It is apparent from this record that defendant did not sustain his burden of proof, and therefore it was not error for the trial justice to deny defendant's request for further inquiry into the jury–selection process.[11]

Finally, we note that on October 8, 1980, the defendant filed with this court a reservation of the right to challenge the composition of the grand jury that returned his indictment pending our decision on the motion to reargue *State v. O'Coin*, R.I., 417 A.2d 310 (1980); however, we denied that motion in *State v. O'Coin*, 414 A.2d 192 (R.I.1980). Furthermore, the record is devoid of any indication that the defendant filed a pretrial motion pursuant to Rules 12(b)(2) and (3) of the Superior Court Rules of Criminal Procedure to challenge the constitution of the grand or petit jury. Under these circumstances, the defendant's reservation of rights is meaningless.

The defendant's appeal is denied and dismissed, the judgment of conviction appealed from is affirmed, and the case is remitted to the Superior Court.

9. We also held, however, that an accused does have the right to require that the state not engage in practices that result in the systematic and deliberate exclusion of his race from the jury lists. *State v. Clark*, 112 R.I. 270, 275, 308 A.2d 792, 795 (1973).

10. In *State v. Johnson*, 116 R.I. 449, 358 A.2d 370 (1976), none of the members of the panel from which the jurors were chosen were black. In the present case, one of the twenty–eight members of the panel was a black female who was ultimately among those chosen to sit as a juror. She did not, however, participate in the deliberations because she was not among those chosen in the draft by lot.

11. *Compare State v. Jenison*, R.I., 405 A.2d 3 (1979), where in addition to statistical evidence the defendants introduced G.L.1956 (1969 Reenactment) § 9–9–3, as amended by P.L.1974, ch. 116, § 1, which exempted from both grand and petit jury service an identifiable and cognizable group of citizens otherwise eligible for jury service.