STATE

v.

Stephen R. GIOIELLI.

No. 78–414–C.A.

Supreme Court of Rhode Island.

June 3, 1980.

Dennis J. Roberts II, Atty. Gen., Judith Crowell, Sp. Asst. Atty. Gen., Stephen Lichatin III, Sp. Asst. Atty. Gen., Chief, App. Div., for plaintiff.

Angelo A. Mosca, Jr., William A. Gosz, Providence, for defendant.

## OPINION

KELLEHER, Justice.

On November 14, 1975, the grand jury for Providence and Bristol Counties returned a three-count indictment charging the defendant, Stephen R. Gioielli, with rape, sodomy (fellation), and extortion. Later, in April 1978, a Superior Court jury acquitted him of extortion but returned guilty verdicts on the rape and sodomy counts. Before us at oral argument,[1] the defendant claimed that the trial justice erred when he twice denied defense motions to pass the case because of responses to certain questions addressed to a police witness and the defendant. Hereinafter we shall refer to the defendant as "the defendant" or by his last name.

The evidence indicates that on the evening of October 23, 1975, Gioielli drove a seventeen-year-old high school student to a stable located somewhere in the town of

---

1. At trial, the defense objected to the trial justice's charge wherein he told the jury that consent was no defense to the sodomy charge. A substantial portion of Gioielli's brief is devoted to the proposition that our sodomy statute, G.L.1956 (1969 Reenactment) § 11–10–1, insofar as it purports to proscribe sex acts committed in private by consenting adults, violates his constitutional right to privacy. At argument time, Gioielli's appellate counsel conceded that our recent rejection of this identical proposition in *State v. Santos*, R.I., 413 A.2d 58 (1980), effectively foreclosed him from pressing this issue.

Johnston for the ostensible purpose of looking at his horse. Gioielli conceded that after the couple had left the stable area, they returned to his automobile and engaged in vaginal intercourse and oral sex. Gioielli insisted that the entire episode was consensual, whereas the student described herself as an unwilling participant.

In considering the denials of the motions to pass, we are reminded by our often-repeated pronouncements that such motions are directed to the sound discretion of the trial justice because, as a front-seat spectator, he or she is best able to gauge the effect of an allegedly improvident remark heard by the jury. *State v. Gianoulos*, R.I., 404 A.2d 81 (1979); *State v. Massey*, R.I., 382 A.2d 801 (1978); *State v. Marrapese*, 116 R.I. 1, 351 A.2d 95 (1976).

The first motion was made during the testimony of a Johnston patrolman who had searched Gioielli before placing him in a cell at police headquarters. When asked to describe what articles were taken from the prisoner, the officer replied, "I seized two five-dollar bills, some change . . . I don't remember the correct amount of change . . . empty prescription bottle, black wallet, I believe. . . ." This response was immediately followed by a motion to pass. The second motion came during Gioielli's cross-examination. In direct examination he had told the jury that after meeting the complainant, he had stopped at a Hartford Avenue liquor store to purchase two quarts of beer. Earlier, the complainant had denied that Gioielli had made such a stop. In cross-examination Gioielli was asked if he had drunk any beer while driving along the streets of Johnston. He replied, "Yes, I had a couple sips." When the prosecutor pressed Gioielli about whether his consumption amounted to "half a glass" and if the consumption occurred while he was driving, the defense lodged its second motion to pass.

Both motions are and were premised on Gioielli's contention that the references to the empty prescription bottle and his drinking while driving implanted in the jury's mind the irradicable notion that Gioielli had been engaged in illegal activities in addition to those described by the complainant.

In denying the first motion to pass, the trial justice firmly believed that the reference to the "prescription bottle" cast no aspersions upon Gioielli's presumption of innocence. The trial justice first buttressed this conclusion by referring to the prior day's testimony in which the complainant had told the jury that Gioielli was wearing a cast on his leg as he escorted her through the stable area. According to the trial justice, this testimony would obviously lead the jury to believe that the bottle had contained a medication that Gioielli used to treat his injured limb. Since the officer had described the bottle in terms of a "prescription," the trial justice further was of the opinion that the jury would unquestionably think that the bottle's contents had been "obtained legally rather than illegally." We cannot fault this reasoning.

During the extended discussion following the second motion to pass, the defense made it clear that it was relying on the rulings of *State v. Amaral*, 109 R.I. 379, 285 A.2d 783 (1972), and *Kolb v. Union R. R.*, 23 R.I. 72, 49 A. 392 (1901). *Amaral* requires a party seeking to introduce evidence of drinking first to satisfy the trial justice at a hearing in the absence of the jury that there is a reasonable chance that the proponent can prove that the drinker at the time in question was intoxicated. *Kolb* states the well-settled rule that specific acts of misconduct are not admissible to impeach the credibility of a witness, since credibility must ordinarily be attacked by evidence of general reputation for truth or veracity.

*Amaral* and *Kolb* have no relevance to what transpired at trial, for Gioielli himself opened the door to the prosecutor's inquiries concerning his intake of alcohol by testifying in direct examination about his two-quart purchase of beer and his consumption of "a couple sips." At no time did the prosecutor attempt to show that Gioielli was driving while under the influence of alcohol. *Kolb's* prohibition against evidence

of specific acts of misconduct is inapplicable, particularly when Gioielli, in his direct testimony, stated that following the beer purchase he had gone to a friend's house and obtained a "gram and a half of hash." Once he had the hash, Gioielli said, he returned to his own home to pick up "my pipe." In describing the period subsequent to the visit to the stable but prior to the evening's sexual activities, Gioielli depicted a scene where he and the seventeen-year-old [2] were sitting in his car "smoking and drinking beer." It is clear that the smoking involved the hash.

The trial justice, in rejecting the second motion to pass, alluded to portions of Gioielli's direct examination in which he reported purchasing the beer and also conceded that he had been imprisoned on a number of charges, including assault, breaking and entering, drunk driving, and reckless driving. It is clear from the record that at the time the prosecutor had reached the point where Gioielli had acknowledged having a "couple sips" of beer, Gioielli had succeeded, through his direct examination, in painting a picture that certainly cast a cloud over any law-and-order image that he might have been attempting to portray. He gains no comfort whatsoever from *Amaral's* intoxication rule or the reputation principle of *Kolb*. We shall not disturb the trial justice's denial of the second motion to pass.

The defendant's appeal is denied and dismissed, and the judgment of conviction appealed from is affirmed.

BEVILACQUA, C. J., did not participate.

---

**2.** General Laws 1956 (1976 Reenactment) § 3–8–11.1 makes it unlawful for anyone to purchase from a licensed retailer any alcoholic beverage to be served or given away to a minor.